**NATIONAL LABOR RELATIONS BOARD**
**v. E. A. LABORATORIES, Inc.**
No. 79, Docket 21773.

United States Court of Appeals
Second Circuit.

Argued April 3, 1951.

Decided May 7, 1951.

David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Frederick U. Reel and Harvey B. Diamond, all of Washington, D. C., for National Labor Relations Board, petitioner.

Olvany, Eisner & Donnelly, New York City (Merwin Lewis and Robert F. Welch, New York City, of counsel), for E. A. Laboratories, Inc., respondent.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The respondent, E. A. Laboratories, Inc. (E. A. L.), was at all times here pertinent engaged primarily in the production of articles for the War and Navy Departments. In November 1943 it had entered into a labor contract signed by both the International Union (International) and Local 844 (Local), United Automobile, Aircraft and Agricultural Implement Workers of America, CIO, which contained a no strike clause. However, relations betwen the Local and E. A. L. were antagonistic from the beginning. On August 5, 1944, the three top officers of the Local were arrested for extorting money from Aufiero, the president of E. A. L., as the price of labor peace. These men were thereupon discharged by E. A. L.

and were indicted on September 18, 1944, whereupon, on September 22, the first strike leading to the order under review began.

From the beginning of the strike E. A. L. offered to take back the rank and file of the strikers but refused to rehire the extortionists and take back certain other union leaders. However, the rank and file refused to return to work unless all previous employees were allowed to return.

The bulk of the testimony at the hearings before the National Labor Relations Board (N. L. R. B.) examiner concerned the legality or illegality of this strike, but that question is not now before us for the decision of the N. L. R. B. ordering reinstatement of the strikers with back pay to November 11, 1944, was based on a finding of condonation by E. A. L. of the strikers' conduct making the issue of legality of the original strike quite irrelevant.

The circumstances surrounding the asserted condonation are as follows:

The three extortionists having been found guilty, a pre-sentence hearing was set for November 10, 1944, in Kings County Court at which time large numbers of strikers were present in the courtroom. The judge, apparently disturbed that so many persons should not be working during the war, inquired as to the cause of the assemblage. Informed that a strike was in progress, he then asked Newman, the representative of the strikers present, if he would lead them back to work, and asked Aufiero if he would take them back if they returned. Both answered in the affirmative. E. A. L. argues that both parties were but restating their positions held both before and after this incident, i. e., on the part of E. A. L. that the rank and file could return but not the leaders. However, the N. L. R. B. found that by this action Aufiero agreed to let bygones be bygones and take back all previous workers except the extortionists, and there was evidence to support this finding. It, therefore, held that E. A. L.'s refusal to take back the strikers on November 11, 1944, when they returned to the plant, and continued refusal to take them back unless they aban--

doned the Local and joined a company union, was in violation of § 8(3) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 151 et seq. (N. L. R. A.), and ordered reinstatement with back pay to November 11 to those who had then offered to return. In view of the finding as to condonation on November 10, 1944, such an order was proper and enforcement is granted.

It is argued by the respondent that the finding of condonation lacked substantial support. But we do not think such was the case for it would seem strange that when Aufiero was asked by the judge "if these people came to your plant tomorrow morning would you let them go into the plant and go back to work," he did not suggest that he would not take back the strike leaders. It is only reasonable to suppose that the convicted three extortionists were disregarded by all parties and that the judge, Newman and Aufiero all agreed that the other strikers were to be taken back. Yet the plant was closed against them the next morning when they sought to return to work.

Respondent contends that even if the finding of condonation is proper, the N. L. R. B. could not order reinstatement with back pay without first determining if such a remedy would best effectuate the purpose of the N. L. R. A. and that this determination cannot be made without deciding whether the strike was originally for an illegal purpose. We disagree. The condonation wiped the slate clean. The subsequent refusal to take the men back was properly held a separate and distinct violation of the N. L. R. A. independent of what had gone before. The N. L. R. B.'s decision as to the appropriate remedy for such a violation will not justify a remand unless erroneous. No such error appears.

█ In April 1945, respondent and the Local entered into an agreement whereby the Local waived its claims to back pay for its members and the strike was settled shortly thereafter. It is clear that this waiver, which was not sanctioned by the N. L. R. B., does not prevent the N. L. R. B. from ordering back pay. 29 U.S.C.A. § 160(a); N. L. R. B. v. Prettyman, 6 Cir.,

117 F.2d 786; N. L. R. B. v. General Motors Corp., 7 Cir., 116 F.2d 306.

█ The balance of the order under attack concerns a subsequent strike in 1945. The 1943 labor contract was to expire 90 days after the end of the hostilities with Germany (May 7, 1945). During this 90 day period E. A. L. refused to bargain with the Local with respect to a new contract. The Local thereafter on August 27, 1945, filed a strike notice as required by § 8(a) of the War Labor Disputes Act, 57 Stat. 163, 50 U.S.C.A.Appendix, § 1501 et seq. (W. L. D. A.), and went out on strike the next day instead of waiting 30 days as required by § 8(a) of the W. L. D. A. and remained on strike until October 12, 1945. The N. L. R. B. found, and this finding is not challenged by the respondent, that this strike arose out of E. A. L.'s violations of the N. L. R. A. and that when the strike ended 27 named persons were thereafter discriminatorily refused reinstatement and that 34 other persons failed to apply for reinstatement believing such application to be futile. It directed that the 27 named persons in the first group be reinstated with back pay and the 34 in the second group be placed on a preferential hiring list. E. A. L. argues that by striking in violation of the W. L. D. A. the persons involved lost all rights to reinstatement and back pay. As to the broad question involved we are disposed to follow the decision of the Sixth Circuit in Hamilton v. N. L. R. B., 160 F.2d 465, 471, cert. den., sub. nom. Kalamazoo Stationery Co. v. N. L. R. B., 332 U.S. 762, 68 S.Ct. 65, 92 L.Ed. 348, that a violation of the W. L. D. A. does not constitute a forfeiture of rights under the N. L. R. A. and that the order directing reinstatement and preferential hiring was therefore proper. However, if the Hamilton case is to be read as denying any effect to W. L. D. A. even to the extent of empowering the N. L. R. B. to order back pay to strikers for wages lost during the thirty day "cooling off" period therein provided we are not disposed to follow it. The whole purpose of the "cooling off" period provided by the W. L. D. A. would be subverted if those who struck in violation of that provision should be paid for so doing. Further-

more such an order would seem to involve a circuity of action for under § 8(c) of the W. L. D. A., E. A. L. could recover from the strikers for damages caused by a strike during the "cooling off" period and part of such damage would seem to be payment of the strikers for work they should have but did not perform during that period.

For the foregoing reasons the order is reversed in so far as it directed any payment to the strikers for loss of wages during the "cooling off" period.

■ Respondent's last objection to the order is that, although the original contract was with both the International and the Local, it is now directed to recognize only the International as sole bargaining agent, the Local's charter having been revoked by the International in 1946, and adverts to technical rules of agency which are not apposite here in support of its claim. The N. L. R. B. is preeminently qualified to decide who is the proper representative of a given group of employees and we will not say that their decision was wrong that the International, by taking over the Local, took over entirely the latter's rights and duties to represent the employees previously shared with the International.

Order modified and as modified enforced.

CLARK, Circuit Judge (dissenting in part).

As to the narrow point of back pay to the 1945 strikers during the 30-day cooling-off period, I think it more logical and reasonable to follow the Sixth Circuit fully or not at all. Judge Miller in Hamilton v. N. L. R. B., supra, showed that provisions making violations of the W. L. D. A. also forfeiture of rights under the N. L. R. A. were struck out during the passage of the former Act through Congress and concluded that failure to comply with it was therefore subject only to the sanction therein specifically provided. So 50 U.S.C.A. Appendix, § 1508(c) states that anyone under a duty to perform any act required under subsec. (a) "who willfully fails or refuses to perform such act shall be liable for damages resulting from such failure or refusal to any person injured thereby and to the United States if so injured," with appropriate jurisdiction of suit therefor granted to the district courts of the United States. We cannot well hold the Board order here a subversion of the whole purpose of the W. L. D. A. without repudiating the necessary foundation of Judge Miller's reasoning.

The other suggestion, that circuity of action would thereby be avoided because the damages under the quoted subsection would be the payment to the strikers during the period, seems—I suggest with deference—overingenious. It is a way of setting aside the Sixth Circuit interpretation *pro tanto*. The damages for which recovery is granted—suffered by the United States or anyone else—are quite clearly those constituting some direct loss from failure of production, such as the loss of a war-production contract or the incurring of penalties for delay under such a contract. The stressed purpose of the Act is to prevent labor disputes "which threaten seriously to interrupt war production." Sec. 1508(a), and see also §§ 1503, 1506(a), 1507(a). To avoid circuity of action, it may well be that the N. L. R. B. should be accorded power to reduce any back-pay award by the amount of *proven* damages in the case of an employee who *willfully* violates the W. L. D. A.; and I should not object to a return of the case to the Board for consideration of this issue, even though respondent among its many vigorous contentions does not include a claim of actual damage suffered. But to say that a penalty legitimately assessed by a governmental agency against a person found in violation of a Congressional Act is itself the damage sustained by the violator under another Act seems to me to travel in a circle ending in the negation of the legitimate penalty.

Moreover, in view of the large measure of discretion accorded the N. L. R. B. in determining remedies for violation of the N. L. R. A., I think we ought not to interfere thus limitedly without more assured legal grounds than are here disclosed.