**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SuCREST CORPORATION and Sugar Workers Council of North America, I. L. A., AFL–CIO, Respondents.**

**Nos. 114–116, Dockets 32433–32435.**

United States Court of Appeals
Second Circuit.

Argued Oct. 30, 1968.

Decided March 24, 1969.

Allison W. Brown, Jr., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel and Iran D. Lanoff, Atty., NLRB, on the brief), for petitioner.

Morton L. Deitch, New York City (Stroock & Stroock & Lavan and David L. Finkelman, New York City, on the brief), for respondent SuCrest Corp.

Joel Field, New York City (Schulman, Abarbanel & Kroner and Howard Schulman, New York City, on the brief), for respondent Sugar Workers Council of North America, ILA, AFL-CIO.

Before LUMBARD, Chief Judge, and KAUFMAN and HAYS, Circuit Judges.

LUMBARD, Chief Judge:

The National Labor Relations Board seeks enforcement of its order finding the union and employer respondents guilty of unfair labor practices in compelling certain employees of the SuCrest Corporation and the Pepsi-Cola Company,[1] who were members of Local 1476, I. L. A., to pay dues to the Sugar Workers Council of North America, International Longshoremen's Association (I. L. A.), AFL-CIO. The Board held that the Council was not the bargaining representative under Section 9(a) of the National Labor Relations Act, of the members of Local 1476 and that therefore the Council and the employers were not entitled under Section 8(a) (3) of the Act to require membership in the Council as a condition of employment. The order we are asked to enforce requires the reimbursement of the dues illegally collected and requires all respondents to cease and desist from further interfering with the exercise by the employees of their rights guaranteed under Section 7 of the Act.

We grant enforcement. The involvement of the Sugar Workers Council in the negotiation of the two most recent contracts covering the affected employees was not sufficient to render the Council the § 9(a) representative of these employees, especially in light of the fact that the members of Local 1476 had twice voted not to affiliate with the Council.

All parties have stipulated to the facts. Local 1476 and Local 976-4 of the I. L. A. for many years have represented the employees at the plants of SuCrest and Pepsi located in New York City. Local 1476 represents the production and maintenance workers and Local 976-4 represents the warehouse workers. Both Locals, together with the International union, have negotiated a series of contracts with both employers. The contracts in effect at the time the alleged unfair labor practices took place were negotiated on January 16, 1963 with Pepsi and in March 1964 with SuCrest,

---

1. The Pepsi-Cola Company was not a respondent before the Board and hence is not involved in this litigation.

the latter contract being effective from October 1, 1963.

The formation of the Sugar Workers Council of North America, I. L. A., AFL-CIO, was authorized by the International union in 1957. In August 1963, pursuant to the authority bestowed on it by a 1963 amendment to the International's Constitution, the I. L. A. Executive Council adopted a proposal formally incorporating the Council into the I. L. A. structure and requiring all Local Unions representing employees in the sugar industry to affiliate with the Council. The Council's functions, as enumerated in its constitution, include broad supervisory power to "secure uniformity of purposes and objects" among the affiliated Local Unions. The Locals must gain advance approval from the Council with respect to every item they propose to present to management in contract negotiations, and the Council is to be a party to all collective bargaining agreements negotiated by the Locals. No strike may be called without the Council's authorization.

Local 1476 never acted to affiliate with the Sugar Council despite the requirement to this effect in the I. L. A. constitution. At two membership meetings the members of the Local specifically voted not to affiliate with the Council.

Under the Council's constitution the members of each affiliated Local are required to pay monthly dues to the Council. During the relevant times the dues rate was set at two dollars per month. The employees of SuCrest and Pepsi had available wage assignment forms authorizing the checkoff of the dues directly to the Council. The forms were executed by all but 46 SuCrest employees and 31 Pepsi employees, all of these employees being members of Local 1476.

In April 1965 James Borrazas, an elected business agent of Local 1476 and the Secretary-Treasurer of the Sugar Council, wrote similar letters to SuCrest and Pepsi listing the names of their respective employees who had refused to pay dues to the Council. The letters requested that the employers discharge these employees "in accordance with the Union Shop Provision of the contract." SuCrest at first refused to comply with this request but, after a conversation with Borrazas, the company agreed to talk with the employees. These employees indicated that they would pay the dues after being told of the possibility of discharge. SuCrest then posted a notice on its bulletin board which contained a schedule of the dates on which each employee would have to pay his dues or be discharged in consequence of his failure to do so. All of the delinquent SuCrest and Pepsi members of Local 1476 did pay such dues to the Sugar Council within the required times.

██ As a result of prior litigation in this court, King v. Randazzo, 346 F. 2d 307 (2d Cir. 1965), it is settled that the Sugar Council assessments, because they were specifically authorized by a special convention of the Council, did not violate § 101(a) (3) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a) (3). This determination, resting solely and explicitly on an application of the terms of § 101(a) (3),[2] in no way forecloses a finding that the successful attempt to collect the dues by threatening to discharge delinquents violated § 8(a) (3)

---

2. Section 103(a) (3) provides that labor organizations such as the Sugar Council, i. e., neither a local nor a federation of national organizations, may levy an assessment upon members only by one of three procedures: 1) by a vote of the delegates to one of its properly convened conventions; 2) by a membership referendum; 3) by vote of its executive board pursuant to express authority contained in the organization's constitution or by-laws. 29 U.S.C. § 411(a) (3) (B).

We held that the Sugar Council's assessment was lawful because of its approval by a special convention; we expressly did not rule upon the propriety, or effect, of the requirement by the I.L.A. that its locals affiliate with the Council. King v. Randazzo, 346 F.2d 307, 310 (2d Cir. 1965).

and § 8(b) (2) of the NLRA. These provisions have a scope independent of § 101(a) (3), and in the current context provide added protection for individual workers against the coercive potential of joint action by management and labor.

Section 8(a) (3) of the NLRA, as an exception to its general prohibition against employment discrimination which encourages or discourages union membership, authorizes contracts requiring membership in a labor organization as a condition of employment. But such a labor organization must be the "representative of the employees as provided in section 9(a) * * *." Section 8(b) (2) prohibits labor organizations from causing an employer to violate § 8(a) (3). Section 9(a) provides in relevant part:

> "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining * * *."

Thus the question before us is whether a majority of the members of Local 1476 working at the Pepsi or SuCrest plants had "designated or selected" the Sugar Council to be their collective bargaining representative prior to the coerced collection of dues. If the Council had not achieved § 9(a) status then any attempt by the employer and the Council to require membership in the Council as a condition of employment was not within the exception provided by § 8(a) (3), and therefore violated § 8(a) (3) and § 8(b) (2).

■ Since the members of Local 1476 voted on two occasions not to affiliate with the Council, if the Council did achieve § 9(a) status it could only have been by a manner more indirect than explicit designation by the Local's membership. The Council relies on its participation in the contract negotiations with SuCrest and Pepsi, its alleged role

as a party to the SuCrest contract, and its relationship to the Local as defined in the constitutions of the I.L.A. and the Council. We find that substantial evidence on the record considered as a whole supports the Board's conclusion, informed by its special experience in determining the identity of bargaining representatives, see NLRB v. E. A. Laboratories, Inc., 188 F.2d 885, 888 (2d Cir. 1951), that the Council functioned only as a "servicing or coordinating body" for I.L.A. locals, and not as a § 9(a) representative of Local 1476's members.

■ The exception provided in § 8(a) (3) for union security clauses confers upon a § 9(a)' representative great power over the members of its bargaining unit, a power which carries with it the danger that the rights of dissenting workers within a unit may be disregarded. The courts have provided some protection against such abuses by implying a duty upon unions to represent fairly all employees within their bargaining unit, and creating a judicial remedy for employees alleging a violation of this duty. See Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); NLRB v. Allis-Chalmers Mfg. Co., 388 U.S. 175, 181, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967). But here we deal with the even more fundamental safeguard of employee rights which is contained in § 8(a) (3) itself: before a union may be invested with the coercive power inherent in a security clause it must be "designated or selected," under § 9(a), as a bargaining representative "by the majority of the employees" in an appropriate unit. For this safeguard to be effective the Board and the courts must confer § 9(a) status only when the majority of a unit has freely and unambiguously accepted a union as its representative. An especially close scrutiny of the facts is called for in cases such as the one before us, where the unit's members twice explicitly rejected a union and its claim to § 9(a) status rests upon a later alleged indirect and implied designation by the membership.

■ We reject the argument that the Sugar Council automatically became a § 9(a) representative by virtue of the requirement imposed by the I.L.A. Executive Council upon all its sugar industry locals that they affiliate with the Sugar Council. This order to affiliate, which the membership of Local 1476 twice repudiated by majority vote, can hardly be equated with a § 9(a) "designation * * * by" the membership of the Local. Whatever affiliation there may have been bore no relationship to the desires of the Local's membership, and provides no basis for the Council's claim to § 9(a) status.

■ It is irrelevant that the I.L.A., under its internal rules, may be able to impose the Council upon its locals as a coordinating body. These internal rules cannot broaden the scope of the § 8(a)(3) proviso; the sanction of discharge may be invoked only on behalf of a union which has been properly designated as a bargaining representative. See Dickey v. NLRB, 217 F.2d 652, 655–656 (6th Cir. 1954); NLRB v. Wooster Division of Borg-Warner Corp., 236 F.2d 898, 904–905 (6th Cir. 1956), affirmed in relevant part 356 U.S. 342, 350, 78 S. Ct. 718, 2 L.Ed.2d 823 (1958); cf. NLRB v. Weyerhaeuser Co., 276 F.2d 865, 873 (7th Cir. 1960), cert. denied 364 U.S. 879, 81 S.Ct. 168, 5 L.Ed.2d 102 (1960).

■ Despite the absence of an explicit designation by the membership of Local 1476 the Council could have achieved § 9(a) status by acting as a bargaining representative during contract negotiations, provided that the final contract was ratified by the membership with full knowledge of the Council's representative role. See NLRB v. Wooster Division of Borg-Warner Corp., 236 F.2d 898, 904–905 (6th Cir. 1956). The evidence in support of such a showing in this case, however, is insufficient to overcome the presumption against such an indirect designation of the Council which arises from the two explicit votes in opposition to the Council by Local 1476. *Compare* Dickey v. NLRB, 217 F.2d 652, 655 (6th Cir. 1954), with NLRB v. Franks Bros. Co., 137 F.2d 989, 992 (1st Cir. 1943), aff'd 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 435 (1944).

The Council was not listed as a party to the Pepsi contract, which was executed prior to the time that the International required all its sugar industry locals to affiliate with the Council. The Council is a signatory to the SuCrest contract, and claims that it is also a party to the contract entitled to invoke the security clause. The contract identified the parties as SuCrest, as party of the first part, and "* * * the International Longshoremen's Association (AFL-CIO), representing its affiliated Locals, Sugar Refinery Workers Local #1476, Sugar Workers Council of North America; and Marine Terminal and Warehouse Local #976–4 (the three latter parties hereinafter called the Union), as party of the second part." The clause can be read as identifying the "three latter parties" either as the I.L.A. and its two locals, or as the two locals and the Council. Only the two locals are mentioned in later provisions of the contract dealing with dues checkoffs and the identification of the two separate bargaining units represented by the locals. We agree with the Trial Examiner's conclusion that the wording of the contract is ambiguous with respect to the status of the Council as a party entitled to invoke the security clause.

We find that this ambiguity was not clarified in the Council's favor by the facts before the Board concerning its role in the contract negotiations. The facts show little with regard to the details of the Council's participation in the negotiations. It appears that the attorney and a representative of the Sugar Council participated in the negotiation of the Pepsi and SuCrest contracts. We are not told whether Local 1476 abided by the requirement in the Council's constitution that a local receive the approval of the Council before submitting any item to management in collective bar-

gaining negotiations. Both contracts were ratified by the membership of Local 1476 before being formally executed, but it is not clear whether or not the membership was aware of the role played by the Sugar Council during the negotiations.

The probable nature of the Council's involvement in the negotiations is best defined by reference to its general function within the I. L. A. structure. Under its own by-laws and the I.L.A. constitution the Council's function is "to co-ordinate the activities of Local Unions," in order "to secure uniformity of purposes and objects." As a means of achieving this objective the Council is given the power to pass upon each contract proposal before it is submitted to management by a local. These provisions indicate that the Council is more logically seen as a representative of the International's interests at collective bargaining negotiations, rather than as the representative of an individual local's membership. This role may well serve valid interests of the I. L. A., but it cannot be equated with status under § 9(a) as the designated representative of the employees within the Local's bargaining unit. We agree with the Board's characterization of the Council as a "servicing or co-ordinating body," not entitled to invoke the union security clause exception to § 8(a) (3).

 We thus enforce the Board's order against the Council since we find that it was not "designated or selected," either directly or by implication, by the membership of Local 1476 as a collective bargaining representative.

Notwithstanding the Union's violation of the Act SuCrest contends that it did not violate § 8(a) (3) and (1) by threatening to discharge the non-dues paying employees since it acted in a good faith belief that the Council was a § 9(a) bargaining representative. It argues that an adoption of the Board's theory of per se liability despite good faith would place upon employers an unreasonable burden to investigate internal union affairs for the purpose of determining whether a union had achieved §. 9(a) status.

 We hold that good faith is not a defense available to an employer under the provision of § 8(a) (3) involved in this case. SuCrest admits, as it must, that good faith is not a defense to a refusal to bargain charge under § 8(a) (5). NLRB v. Burnett Construction Co., 350 F.2d 57, 60 (10th Cir. 1958); Old King Cole v. NLRB, 260 F.2d 530, 532 (6th Cir. 1958). Yet under § 8(a) (5) employers are called upon to make the exact same determination with which SuCrest was confronted in this case: whether or not a given union is the lawful bargaining representative under § 9 (a) of the NLRA. We are urged to distinguish the § 8(a) (5) cases on the grounds that in refusing to bargain an employer is acting to further his own interests, while here SuCrest claims it was merely "an unwitting victim of internal union machinations trying to fulfill its contractual obligations * * *." But it is often in an employer's interests to go along with the demands of a union which do not harm the employer economically, since it thereby avoids friction with the union. This understandable desire to accede to union demands may result, in circumstances similar to those in this case, to precipitous action which is highly prejudicial to the interests of dissenting individuals or minorities within the union. The Board's decision to hold employers responsible regardless of subjective intent for their conduct in enforcing a security clause will have the salutary tendency of encouraging employers to exercise caution before acting in concert with the union leadership to discipline or discharge employees who fall into disfavor with that leadership.

It is important to note that two provisions in § 8(a) (3)—those prohibiting discrimination against employees wrongfully denied membership in a union—specifically provide that an employer does not violate the Act unless he acts despite having "reasonable grounds" for

believing that the union has acted improperly. *See* NLRB v. Zoe Chemical Co., 406 F.2d 574 (2nd Cir., Jan. 13, 1969). The fact that a similar reasonable belief defense was not incorporated in the proviso involved in this case strongly suggests that the reasonableness of the employer's incorrect determination of the § 9(a) representative was regarded as irrelevant by the drafters of § 8(a) (3).

The Board's order, recognizing that the union was the primary wrongdoer in this case, holds SuCrest liable only secondarily for reimbursement of its 46 employees. We hold that the Board was correct in finding SuCrest guilty of violating § 8(a) (3) and (1), and in determining that the union is primarily liable for reimbursement of the dues illegally collected under threat of discharge.

Enforcement granted.

HAYS, Circuit Judge (dissenting):

In determining that the Council was not a Section 9(a) bargaining representative the majority fails to give proper consideration to the power of the ILA to supervise its local unions. The constitution of the ILA gives it "supreme legislative, executive and judicial authority over all members and subordinate bodies * * *." Passage by the ILA of a resolution requiring its locals to affiliate with the Council therefore effected that affiliation. The locals were directed to cooperate with the Council in collective bargaining, as required by the Council's constitution. If the membership of a local did not wish to have this relationship with the Council, it could have withdrawn from the ILA; it was not given the option of remaining in the ILA and refusing to cooperate with the Council. The two votes against affiliation are thus without significance because they were nothing more than a vain effort to exercise an unavailable option. By retaining the affiliation with the ILA, the membership of the local must be held to have agreed to the required relationship with the Council.

The record shows to my satisfaction that the Council's role was that of a Section 9(a) representative. The Council's constitution requires affiliated locals to consult the Council concerning items to be negotiated and to receive approval of the items before the negotiations. Once the contract is executed, the Council is to assist in administering it and its approval is required before a local may call a strike.

The Council participated in negotiating both the Pepsi and the SuCrest contracts. Both contracts were ratified by the members of Local 1476.

Because Local 1476 accepted affiliation with the Council and because the Council's functions were those of a Section 9(a) representative, the Council achieved Section 9(a) status. Consequently, it did not violate Sections 8(b) (2) and (1) (A) in seeking to enforce payment of dues by discharge or threat of discharge and SuCrest did not violate Sections 8(a) (3) and (1) by threatening to discharge the employees if the dues were not paid.