Willie Lee GORDON et al., Plaintiffs-Appellants,

v.

LABORERS' INTERNATIONAL UNION OF NORTH AMERICA et al., Defendants-Appellees,

Marcelus Hodge et al., Defendants-Appellants.

The ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC., OKLAHOMA CHAPTER–BUILDERS DIVISION, Plaintiff,

v.

LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LOCAL 612, Defendant,

Laborers' International Union of North America, Intervenor-Appellee.

· Nos. 73–1111, 73–1112.

United States Court of Appeals, Tenth Circuit.

Argued Aug. 13, 1973.

Decided Nov. 21, 1973.

Rehearing Denied Feb. 8, 1974.

See also 476 F.2d 1388, Em.App., 489 F.2d 749.

C. W. Schwoerke, Oklahoma City, Okl., for plaintiffs-appellants Willie Lee Gordon, and others.

James M. Little, Oklahoma City, Okl. (Leslie L. Conner and Leslie L. Conner, Jr., Oklahoma City, Okl., on the brief), for defendants-appellants Marcelus Hodge, and others.

Jules Bernstein, Washington, D. C., for defendant-appellee Laborers' International Union of North America.

Before BREITENSTEIN and DOYLE, Circuit Judges, and TALBOT SMITH,* District Judge.

BREITENSTEIN, Circuit Judge.

This controversy concerns the validity of a collective bargaining contract made by a local union and the imposition of a trusteeship over the local by its parent international union. The trial court upheld the trusteeship and voided the contract. We affirm the trusteeship and remand for further proceedings to determine the validity of the contract.

The posture of these appeals requires explanation. In D.C. No. 70–520 Gordon, et al., were plaintiffs, and the defendants included Laborers' International Union of North America and Hodge, et al. D.C. No. 72–544 was an action by Associated General Contractors against Laborers' International Union of North America, Local 612. The International Union which was the parent of Local 612 intervened. The trial court consolidated No. 70–520 and No. 72–544 for trial and the two cases were disposed

* Of the Eastern District of Michigan, sitting by designation.

of by one judgment. The Gordon group, which is made up of members of Local 612, has appealed and its appeal is our No. 73–1111. The Hodge group, which is compsed of officers of Local 612, has also appealed and its appeal is our No. 73–1112. The International Union is resisting each appeal. The Associated General Contractors has made no appearance. The situation is such that we cannot say with any assurance whether anyone is appearing before us on behalf of Local 612. The Gordon group and the Hodge group will be referred to as appellants.

■ Laborers' International Union of North America is a labor organization of about 600,000 members. It is made up of local unions and district councils located throughout the United States and Canada, and is governed by a General Executive Board in accordance with a written constitution. The International has chartered nine locals in Oklahoma. Its constitution provides for the chartering of district councils upon the application of affiliated locals when combination of economic power and effort is advantageous. A district council is a labor organization within the purview of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA). See 29 U.S.C. § 402(i).

Local 612, Oklahoma City, was chartered by the International in 1920. In 1968, seven of the Oklahoma locals, not including Local 612, applied for a district council charter. Local 612 objected to the creation of the council and declined to affiliate with it. Acting under its constitution, the International ordered Local 612 to affiliate, and District Council was created.

In 1970, several members of Local 612 sued International, District Council, Local 612, and three of the officers of Local 612 seeking in the alternative authority for Local 612 to withdraw from District Council or an order providing that Local 612 have representation on District Council that would be fairly representative of its membership in proportion to that of the other eight local unions in the council. This case is dis-

trict court No. 70–520. No significant action was taken in the case until the spring of 1972.

Associated General Contractors of America, Inc., Oklahoma Chapter-Builders Division (Contractors) is an Oklahoma association of building contractors. Early in 1972 District Council notified Contractors that its bargaining committee would meet with their negotiating committee to negotiate the collective bargaining agreements between the Contractors and the locals. Local 612 desired to bargain itself and set up a committee for that purpose. An agreement was reached between the Contractors and Local 612 on March 13, 1972.

On March 27, 1972, the International notified Local 612 that pursuant to Art. IX, § 7 of the International Constitution a hearing would be held on April 10 to determine whether Local 612 should be placed under trusteeship. Three officers of Local 612 appeared at the hearing. The Hearing Panel of the International made specific findings pertaining to the March 13 contract with Contractors, violations of the International's constitution and policies, and other matters. On April 25, the International imposed a trusteeship on Local 612.

On May 3, 1972, the officers of Local 612 filed an answer in the lawsuit which had been pending for nearly two years and in a cross-claim against the International alleged that the imposition of the trusteeship on Local 612 was wrongful. The plaintiffs then amended their complaint to allege the invalidity of the trusteeship and to request an injunction barring the trusteeship. After a hearing, the district court on May 16 entered the requested preliminary injunction.

It should be noted that prior to the negotiations between Local 612 and the Contractors and at a meeting attended by 59 of the over 600 members of Local 612, those present voted 40 to 11 for the appointment of a bargaining committee of its own to negotiate with Contractors. This action occurred in spite of a warning given by the officers of Local 612 that the action would violate the Inter-

national Constitution. At a July 17 hearing the district court expressed a desire to learn the wishes of the Local 612 membership with regard to its representation in collective bargaining negotiations and directed its magistrate to conduct a meeting of the membership for this purpose. At an August 21 meeting, and after presentation of the conflicting viewpoints, the vote was 157 to 45 in favor of representation by District Council.

On August 8, Contractors brought suit against Local 612 for a declaration under the Labor-Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185(a), that the March 13 agreement between them and Local 612 was valid and binding. This case is district court No. 72–544. The answer of Local 612 admitted the allegations of the complaint and prayed that the contract be upheld and enforced. International then moved to intervene in Contractors' suit and denied the validity of the March 13 contract. The district court permitted the intervention and consolidated action No. 70–520 with action No. 72–544. After a hearing, the court upheld the trusteeship, nullified the contract, and dissolved the preliminary injunction which it had previously granted. See Gordon v. Laborers' International Union of North America, W.D.Okl., 351 F.Supp. 824.

Appellants attack the imposition of the trusteeship. Title III of LMRDA provides for trusteeships over subordinate labor organizations. Its § 302, 29 U.S.C. § 462, says that trusteeships shall be established and administered only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose, among other things, of "assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization."

After the International's 1966 convention, its General Executive Board ordered that, in the next round of collective bargaining negotiations, health, welfare, and pension plans were to be negotiated for the benefit of all members. District Council took the position that bargaining on these subjects was mandatory under the action of the International. As a result of District Council negotiations all of the Oklahoma locals, except Local 612, became parties to a common Oklahoma Laborers' Health and Welfare Benefit Plan and became covered by the Laborers' Central and Southern States Pension Fund. The March 13 contract between Local 612 and Contractors did not contain the health, welfare, and pension benefits obtained for other Oklahoma locals by the District Council.

Appellants say that our decision in United Brotherhood of Carpenters and Joiners of America v. Brown, 10 Cir., 343 F.2d 872, is controlling and requires reversal. That case was concerned with the imposition by a national union of a trusteeship over a local union because, among other things, the local had failed to affiliate with a district council. The trial court held that the trusteeship was invalid and this court affirmed.

 Brown is distinguishable from the case at bar. In Brown the authority of the national to impose the trusteeship was implied from the general authority found in its constitution and bylaws. The court held, 343 F.2d at 882, that § 302 is not satisfied by a general authority and requires that the "organization's constitution and bylaws set forth the circumstances under which a trusteeship may be established over its local unions and the manner or procedure in which it is to be imposed." In the case at bar the International's constitution specifically set forth the circumstances and procedures under which a trusteeship may be imposed. In our opinion those circumstances and procedures are in accord with the requirements of § 302.

In Brown the trusteeship was imposed because the local would not affiliate with the district council and would not raise its dues. The court pointed out

that these actions "have nothing whatever to do with collective bargaining." 343 F.2d at 883. Collective bargaining is at the heart of the case before us. The International had established legitimate objectives concerning health, welfare, and pension programs. Through its constitution the International required that bargaining negotiations be conducted by the district council. Local 612 flaunted its disregard of these objectives and rules of the International. After notice to Local 612 and after a hearing at which officers of Local 612 appeared, the General Executive Board made specific findings and concluded that the imposition of a trusteeship was within the power of the International's President under Art. IX, § 7, of its constitution. The record shows that the actions of the union officials were in good faith and were fair and reasonable. In these circumstances the courts are reluctant to substitute their judgment for that of the union officials. Vestal v. Hoffa, 6 Cir., 451 F.2d 706, 709. See also Parks v. International Brotherhood of Electrical Workers, 4 Cir., 314 F.2d 886, 906. In our opinion the International properly imposed the trusteeship and in so doing complied with LMRDA, Title III, § 302, 29 U.S.C. § 462.

Article IV of the International's Uniform District Council Constitution provides for weighted voting in the district councils.[1] The result is that Local 612 has fewer votes in District Council than it would have if delegates were appointed in direct relationship to the size of each local.[2] Appellants say that the weighted voting violates the equal rights requirements of the Bill of Rights of Labor Organizations, LMRDA, Title I, § 101(a)(1), 29 U.S.C. § 411(a)(1).

■ The International argues that the court has no jurisdiction to consider this point because of the decision in Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190. Calhoon was concerned with eligibility requirements under LMRDA, Title IV, § 401(e), 29 U.S.C. § 481(e), and held that the exclusive remedy was a suit by the Secretary of Labor. 379 U.S. at 140–141, 85 S.Ct. 292. We are concerned with rights claimed under Title I, § 101, 29 U.S.C. § 411. The differences between Title I and Title IV are such that we believe that Calhoon does not negate jurisdiction in the instant case. In our opinion jurisdiction lies under Title I, § 102, 29 U.S.C. § 412.

■■ The Labor Bill of Rights gives every member of a labor organization equal rights and privileges to attend, participate in, and vote at meetings of the organization of which he is a member. Our concern is not with the rights of members of Local 612 to vote at its meetings. Rather we are concerned with the local's rights to delegates representing it at the district council. In our opinion § 101(a)(1) was not intended to impose a proportional representation system on international unions or their intermediate bodies.

American Federation of Musicians v. Wittstein, 379 U.S. 171, 85 S.Ct. 300, 13 L.Ed.2d 214, was concerned with a weighted-voting system at an international's annual convention. The Court upheld the weighted voting and said, 379 U.S. at 182, 85 S.Ct. at 306, that § 101(a)(3)(B) "authorizes a representative system of government and does not require a town meeting for action by an international or national union." We believe that this reasoning applies to voting at the district council level as well as at an annual convention.

■ We find no statutory requirement that representation in delegate bodies of labor organizations reflect the proportionate number of members in

---

1. The provisions pertinent here establish the following entitlement to delegates on the District Council: 2 delegates for 500 members or less; 3 delegates for 501 to 1000 members.

2. The nine locals making up District Council have the following members: Muskogee 334; Bartlesville 65; Lawton 140; Ponca City 97; Oklahoma City (Local 612) 659; Stillwater 65; Tulsa 822; Enid 42; Vinita 101.

each subordinate labor organization represented in those bodies. Section 101(a)(1) says that the rights which it recognizes are "subject to reasonable rules and regulations in such organization's constitution and bylaws." Congress did not limit union autonomy in weighting delegate votes. The pertinent provisions of the Uniform District Council Constitution have stood the test of time and should not be abrogated by the courts in the absence of a clear directive from Congress. Disputes between an international and one of its locals are best left for internal settlement. Parks v. International Brotherhood of Electrical Workers, 4 Cir., 314 F.2d 886, 906.

■ We turn to the question of the validity of the March 13 contract. The district court held, 351 F.Supp. at 834, and we agree, that "International properly decided that the negotiation and implementation of collective bargaining agreements on an area-wide basis through the vehicle of a [district] Council constitutes a desirable objective for the purpose of obtaining uniform standards and conditions of employment for its members."

■ Appellants argue that the purpose of the trusteeship was to substitute District Council as the bargaining agent for Local 612 in violation of the National Labor Relations Act, 29 U.S.C. § 151 et seq. The answer is that the National Labor Relations Board has exclusive jurisdiction to determine the question of representation for purposes of collective bargaining. Confederated Independent Unions v. Rockwell-Standard Company, 3 Cir., 465 F.2d 1137, 1140–1141. The

cases relied on by the appellants are not in point. National Labor Relations Board v. SuCrest Corporation, 2 Cir., 409 F.2d 765, was a proceeding to enforce a NLRB order. Navarro v. Gannon, 2 Cir., 385 F.2d 512, holds that under LMRDA union members have the right to be free of interference from an international union except where the parent union, in accordance with lawfully established procedures, has imposed a trusteeship. In the case at bar a trusteeship was so imposed.

The district court nullified the March 13 contract because of the failure of a condition subsequent. 351 F.Supp. at 835. The situation requires an explanation. Pursuant to the Economic Stabilization Act of 1970, 12 U.S.C. § 1904, the President created the Laborers' National Craft Board and the Construction Industry Stabilization Committee. The parties to the March 13 contract made it subject to the condition subsequent that it be approved by the Craft Board and the Stabilization Committee. The Craft Board rejected the contract.[3] The Stabilization Committee reviewed the Craft Board action and agreed. We have the strange situation of a collective bargaining agreement being disapproved because the wage increase was too small rather than too large.

The Contractors appealed to the Temporary Emergency Court of Appeals. See Associated General Contractors of America, Inc., Oklahoma Chapter-Builders Division v. Laborers' International Union, Em.App., 476 F.2d 1388. TECA, in an exhaustive and comprehensive opinion which seems to us to treat the case as one for the review of administrative action held, 476 F.2d at 1407,

---

3. Its reasons are stated in Associated General Contractors v. Laborers' International Union, Em.App., 476 F.2d 1388, 1391–1392, from which we quote: "The proposed agreement failed to meet the Craft Board criteria for Oklahoma on the following counts. First, the agreement covers a three-year period and would stand as an absolute bar to necessary restructuring. Second, the agreement fails to narrow the economic gap between Tulsa and Oklahoma City and indeed, widens the margin. Third, we have reservations concerning the fact that no provisions have been made for welfare and pension benefits. Even though the rest of Oklahoma is covered by agreements calling for these benefits negotiated by the Oklahoma Laborers' District Council and the Oklahoma Chapter AGC [Contractors]." (sic) The Craft Board also questioned the representative status of the negotiating committee purportedly representing Local 612.

that absent certain factors, "no order of an economic stabilization program agency should be mandated or subjected to invalidation in any judicial proceedings unless that agency has been made party to such proceedings." The court then said, Ibid., that the Craft Board and Stabilization Committee "may be joined," and reversed and remanded the case for further proceedings consistent with the opinion. Apparently, no one called the attention of TECA to the appeals with which the Tenth Circuit is now concerned.

■ We find ourselves in an anomalous situation. Appeals have been taken to both TECA and the Tenth Circuit from the same district court judgment. Both appeals deal with the same subject, the validity of the March 13 contract. In TECA the question was compliance with the Economic Stabilization Act. In the Tenth Circuit the question is the authority of Local 612 to make the contract in violation of the rules and policies of the parent union. The Tenth Circuit situation is complicated by the fact that the Contractors have not appeared and the record is so confusing that we are unable to say whether Local 612 is before us. Although we have grave doubt as to the validity of the contract in the circumstances shown by the record before us, we are reluctant to decide the issue.

A strange situation exists when two different appellate courts are reviewing the same district court judgment. TECA found that it had jurisdiction and remanded with directions. Apparently there has been no effort to obtain certiorari review of the TECA action and its decision is the law of the case. An intolerable situation would result if we came out with a different disposition than did TECA.

One other matter should be mentioned. In its opinion TECA recognizes a possible jurisdictional conflict between the National Labor Relations Board and the agencies created pursuant to at the Economic Stabilization Act. See 476 F.2d

at 1397, n. 8. If the Craft Board and the Stabilization Committee are joined as parties in accordance with the TECA holding, consideration might well be given to the joinder also of the National Labor Relations Board.

We believe that good judicial administration mandates that we avoid any semblance of a conflict with TECA. The best solution which we can contrive is to get the entire question of contract validity back into the district court. We affirm the judgment insofar as it upholds the trusteeship and dissolves the preliminary injunction. On the issue of the validity of the March 13 contract we reverse and remand the case for further proceedings in the light of both this opinion and the TECA opinion.

In each appeal the judgment is affirmed in part and reversed in part. Costs are assessed against the appellants.