627 F.2d 978
 105 L.R.R.M. (BNA) 2903, 89 Lab.Cas. P 12,290
 Emma BUSCH, Elsie James and Gelonia Smith, Plaintiffs-Appellants,
v.
Glenn O. GIVENS, Individually and in his capacity as General
President of the Los Angeles American Postal
Workers Union, AFL-CIO, Defendant-Appellee.
 No. 78-2947.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 1, 1980.
Decided Sept. 12, 1980.
 
 Julius Reich, Reich, Adell, Crost & Perry, Los Angeles, Cal., for plaintiffs-appellants.
 Elizabeth Garfield, Los Angeles, Cal., on brief; Abe F. Levy, Los Angeles, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before MARKEY,* Chief Judge, and HUG and PREGERSON, Circuit Judges.
 MARKEY, Chief Judge:
 
 
 1
 Givens appeals the grant of a permanent injunction by the United States District Court, Central District of California, ordering him to fund the attendance of specific delegates at a national union convention. We vacate the injunction.
 
 Background
 
 2
 Givens is president of the Los Angeles Local of the American Postal Workers Union (Local). Busch, et al. (Busch), are trustees and members of Local.
 
 
 3
 On August 9, 1978, Busch filed a complaint based on Title V of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 501 et seq., (Act) charging that Givens breached his fiduciary duty under the Act by violating Article IX, Section 8 of Local's 1974 Constitution[1] when he failed to fund the attendance at the national Union convention of certain delegates elected under that article.[2]
 
 
 4
 Givens based his refusal to fund attendance of the elected delegates on a 1978 amendment to Local's Constitution, which designated persons holding only certain offices as delegates.[3] The 1978 amendment had been presented to Local's membership by referendum and was thereafter proposed and ratified by majority vote at a regular meeting of the Local.[4]
 
 
 5
 The District Court held the 1978 amendments "illegal, null and void" because the steps of presenting by referendum and voting at a meeting occurred in reverse sequence from that in which those steps appear in Article XVI of Local's Constitution.[5]
 
 Issue
 
 6
 The dispositive issue is whether Local's Constitution was legally amended in 1978.[6]
 
 OPINION
 
 7
 Interpreting Article XVI as requiring that presentation and voting at a general membership meeting must occur before presentation by referendum, the district court said:
 
 
 8
 Therefore, the President, Givens, has acted in contradiction to what he should have to the constitution then in effect, the constitution of 1974 . . . article XVI which requires that any amendment and every amendment must be proposed in writing and recorded at a regular session of the local and be passed by a majority of the members present and voting before it's presented by way of referendum.
 
 
 9
 The ratification is not sufficient, or the alleged ratification after the referendum is not sufficient.
 
 
 10
 Presented with the assertion that post-referendum approval was an acceptable interpretation of Article XVI, the district court responded that "There is no provision for such ratification." To the assertion that Article XVI did not clearly require a specific sequence, the district court said, "All I can say is that it's clear to me."
 
 
 11
 Having been supplied no other basis, we must conclude that the district court interpreted the placement in Article XVI of the referendum step after the meeting and vote step as a requirement that they must occur in that order. Nothing in Local's Constitution or of record here, however, would so indicate. A requirement that amendment steps be performed in the order listed should not, without more, be engrafted upon Local's Constitution by court order. "(W)hen the Union officials have offered a reasonable construction of the constitution, and no bad faith on their part has been shown, the courts should not disturb the Union officials' interpretation." Stelling v. International Brotherhood of Electrical Workers, 587 F.2d 1379, 1389 (9th Cir. 1978).
 
 
 12
 Though Article XVI is not a model of clarity, it is not ambiguous. It is silent on the issue before us, that is, whether an amendment is void if the two steps it requires are not performed in the order in which they appear. But silence here is not ambiguity. There is no sequence-of-performance provision to be declared either clear or ambiguous. There is simply a provision requiring two steps. It is undisputed that the two required steps were taken. There was an affirmative vote in a referendum and there was a majority vote at a meeting which ratified the approval resulting from the memorandum. Absent a provision in Local's Constitution mandating a particular sequence, or some extraneous circumstance compelling that sequence, we cannot say that the amendment was null and void.
 
 
 13
 Busch argues first that the order of listing clearly indicates the intended order of performance. The argument lacks merit. If the drafters of Article XVI had intended to "clearly indicate" a required order of performance they would have experienced no difficulty in finding suitable connective phrases, such as "before," "thereafter," "following that," "and then" or the like.[7] Absent some such indication, it cannot be said that a mere listing of steps indicates an intent that they must be performed in the order listed. On the contrary, recognizing that a listing must be in some order, the absence of connective phrases or similar means of indicating an intended sequence of performance argues for the view that no particular sequence was intended and that either of the two possible sequences would be acceptable.
 
 
 14
 Busch then says the intent must have been that the membership meeting vote be held first, because that sequence allows open debate on proposed amendments and an opportunity for the membership to reject proposed amendments at the meeting. Otherwise, says Busch, the requirement for a vote at a meeting would be nullified. The argument is refuted by the facts. Nothing in the procedure followed by Local here precluded open debate at the meeting. It is, moreover, arguable that debate was thereby facilitated, foes of the proposal having been alerted by the referendum and thus given additional time to prepare countering arguments. Nor was the meeting requirement nullified. If the proposed amendment had been rejected at the general membership meeting the affirmative referendum vote would have been rendered void.
 
 
 15
 When, as here, the outcome is essentially unaffected by either of two reasonable interpretations of a union's constitution, it is not the function of a court to adopt that which would undo the action of the union members. Absent bad faith or other compelling circumstance, a union's interpretation of its constitution, as well as its interpretation of its own rules and procedures, should prevail over a court's notion as to how the union should conduct its affairs. Stelling v. International Brotherhood of Electrical Workers, supra; Vestal v. Hoffa, 451 F.2d 706, 709 (6th Cir. 1971), cert. denied 406 U.S. 934, 92 S.Ct. 1768, 32 L.Ed.2d 135 (1972); see also Gordon v. Laborers' Int'l Union, 490 F.2d 133, 137 (10th Cir. 1973); Case v. International Bhd. of Elec. Workers, Local 1547, 438 F.Supp. 856, 862 (D. Alaska 1977); cf. International Bhd. of Boilermakers v. Hardeman, 401 U.S. 233, 242-43, 91 S.Ct. 609, 615, 28 L.Ed.2d 10 (1971); Local 357, International Bhd. of Teamsters v. NLRB, 365 U.S. 667, 676, 81 S.Ct. 835, 840, 6 L.Ed.2d 11 (1961).
 
 
 16
 In sum, Local's Constitution insures two opportunities to defeat a proposed amendment. Both opportunities were provided to Busch. Local's choice between the two possible sequences in which to provide those opportunities has not been shown violative of any provision of Local's Constitution. Hence Givens' refusal to fund attendance of Busch at the convention was not a violation of his fiduciary duty under the Act.
 
 Conclusion
 
 17
 We hold the District Court's interpretation, that Article XVI requires first a general membership vote and then a referendum, to have been error. Local having performed the required amending steps, its Constitution was validly amended in 1978. The injunction ordering Givens to fund the attendance of delegates in a manner required under Local's 1974 Constitution was granted in error.
 
 
 18
 INJUNCTION VACATED.
 
 
 
 *
 Honorable Howard T. Markey, Chief Judge, U.S. Court of Customs and Patent Appeals, sitting by designation
 
 
 [1]
 Article IX, Section 8 of the 1974 Constitution, as amended in 1977, provides in pertinent part, as follows:
 Delegates from this Local to the convention . . . shall be elected. . . . There will be twelve (12) delegates from the clerk craft, five (5) delegates elected from the maintenance craft, four (4) delegates elected from the MVS craft, three (3) delegates elected from the special delivery craft.
 
 
 [2]
 Givens did certify the complaining delegates elected under Article IV of Local's Constitution. He simply refused to pay their expenses out of Local's treasury. In response to the injunction, Givens paid the expenses of the delegates at the then-scheduled and subsequent conventions. Local does not seek a return of those payments
 
 
 [3]
 Article IX, Section 8 of the 1978 Constitution provides that delegates to the convention should be certain designated officers:
 (A) General President; (B) General Executive Vice President (sic) (C) General Secretary-Treasurer; (D) President, Clerk Craft; (E) Administrative Vice President; (F) President, Maintenance Craft; (G) Administrative Vice President, Maintenance Craft; (H) President, Motor Vehicle Craft; (I) Administrative Vice President, Motor Vehicle Craft; (J) President, Special Delivery Messengers Craft; (K) Administrative Vice President, Special Delivery Messengers Craft.
 
 
 [4]
 The parties agree that the report and results of the referendum were presented and approved by vote at the membership meeting. The district court's findings that the amendment was not recorded and passed at a regular session of the local, as Busch admits, was based on the occurrence of those events after the referendum. If viewed as separate findings, dehors the sequence factor, they would on this record be clearly erroneous. Fed.R.Civ.P. 52(a). If there were minor informalities in presentation and recording at the regular meeting, they would not render the amendment void and would not be such as to nullify the approving vote of Local's members
 
 
 [5]
 In relevant part, Article XVI of the 1974 Constitution, as amended in 1977, (covering amendments) provides as follows:
 This Constitution . . . shall not be amended or annulled, except when such amendment is proposed in writing and recorded at the regular session of the Local, and such proposal is passed by a majority of the members present and voting. And that such proposal be presented to the entire membership by means of a referendum, to which the proposed Constitutional amendment is sent to the last known address of the members.
 
 
 [6]
 In view of our disposition, we need not and do not reach the issues of whether Local was an indispensable party, whether Busch complied with the procedural requirements of 29 U.S.C. § 501, and whether an injunction was appropriate when the remedy sought was the payment of money
 
 
 [7]
 The district court in effect and in fact (see quote, supra ) read the word "before" into Article XVI of Local's Constitution