PACKERS HIDE ASSOCIATION, Inc., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 18056.

United States Court of Appeals Eighth Circuit.

April 29, 1966.

---

Frederick S. Cassman, of Abrahams, Kaslow, Story & Cassman, Omaha, Neb., for petitioner.

Paul M. Thompson, Atty., N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Gary Green, Atty., N. L. R. B., Washington, D. C., for respondent.

Before VAN OOSTERHOUT, MATTHES and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

Petitioner, Packers Hide Association, Inc., seeks review of an order of the National Labor Relations Board based on findings that petitioner violated § 8(a)(1) and (3) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 158, by discharging an employee for instigating a wildcat strike. The Board has cross-appealed for enforcement.

Petitioner is a Nebraska corporation employing twenty-eight persons. The United Packing House, Food and Allied Workers, AFL–CIO, is the certified bargaining agent of petitioner's employees. The bargaining contract in effect during the period involved contained a valid no-strike agreement and an outline for grievance procedures.

The case was tried directly to a three-member panel of the Board upon stipulated facts. The Board's decision and order are reported at 152 NLRB #67.

On the morning of October 7, 1964, employee Johnson informed plant manager Bates that he had a sore finger and would like to see a doctor. Bates gave his permission and instructed employee Christiansen to temporarily replace Johnson at the latter's machine. Although Christiansen was the only employee qualified to replace Johnson on this particular machine, he persistently refused to perform the assignment, and, after warnings by Bates, was discharged. A call to the police was necessary before Christiansen would leave the plant.

After this incident, employee Mason, a union steward, called to his fellow employees to walk out until Christiansen returned, and upon his urging eight of the employees left the plant. By noon that day picketing was instituted in front of the plant.

At approximately 2:00 p. m. Bates told the picketing employees they could come

back to work, with the exception of Christiansen, who had already been discharged. The offer was declined and the picketing continued until 4:00 p. m. when the union's field representative, Dappen, arrived, and, who with Mason and employee Hooks, advised Bates that the striking employees were mistaken and wanted to return to work. Because Bates was filling in on a production job and was very busy, a meeting was arranged for the following day. Bates also consented to the strikers' returning to work the next morning but again excluded Christiansen.[1]

The following morning, the employees returned to work. About noon Bates met with the company owners and attorney to discuss the events of the preceding day. It was decided to discharge Mason for instigating the strike and to give disciplinary layoffs to the strikers.

Later in the afternoon the company-employee meeting was held; and, after discussing Christiansen's situation, Mason was given his discharge notice. Hooks was given a letter advising him of his one week suspension although it was

rescinded. As the meeting concluded, the company also rescinded the original decision of disciplinary layoffs to all the strikers and reinstated Christiansen with a twenty day suspension.

The issue here is narrowed by the Board's concession that the walkout violated a valid no-strike provision in the bargaining agreement, thus disentitling the strikers from protection against discharge under § 7 of the Act.[2]

The Board's decision rested solely on the ground that the company forgave the striking employees and condoned their unlawful conduct. The Board concluded:

"When, at about 2 p. m. on the day of the walkout, Bates invited the strikers to return to work, he said nothing about any meeting and made no reservations whatsoever, actual or potential, limiting the status of the strikers in any respect upon their return to work. When, at about 4 p. m. on the same day, the Union notified the Respondent that the strikers were willing to return to work the next morning, and the Respondent agreed thereto, no issue remained unresolved as to the strikers.

1. Paragraph 9 of the Stipulation of Facts covers the above facts:

"9. None of the employees who walked off the job returned to work on October 7. Mason would testify that about 2:00 p.m. on the day of the walkout, Bates went outside the plant and told the employees who had walked off the job that they could come back to work, but that Christiansen was fired. At approximately 4:00 p.m., on the day of the walkout, Dappen, Field representative of the charging party arrived at the premises and picketing was discontinued. Dappen, Mason, and Hooks went into Bates' office and talked to Bates. Hooks would testify that Dappen told Bates that the employees who had walked out had made a mistake and wanted to come back to work. Bates would testify that at the time Dappen arrived at the plant he (Bates) was very busy and was filling in on one of the production jobs in order to complete the day's production; that he (Bates) advised Dappen that he was too busy to hold a meeting that afternoon but would meet with Dappen the following day. Hooks would further testify that Dappen then said that he

would set up a meeting the next day. Mason would testify that Bates said that the men could come back tomorrow, but that Christiansen was fired. Bates would testify that Dappen told him (Bates) that he wanted the men to report and go to work the following day and asked if it would be okay with him (Bates). Bates would further testify that he told Dappen it would be okay but that he would not take Christiansen back. Hooks would testify that Bates said that all of them could report and go to work in the morning except Christiansen. Bates would testify that Dappen told him that the men would be back the following day (October 8, 1964) and that they would have a meeting and talk about it."

2. Respondent's brief states:

"There is no dispute here that the October 7 strike at petitioner's premises was in breach of a valid no-strike provision in the applicable bargaining agreement; accordingly, the strikers were not at the time entitled to the customary protection against discharge accorded by Section 7 of the Act."

\* \* \* The Respondent's decision, on October 7, in short, was to forgive and forget all aspects of the strike, including both leadership and participation. We find that, by inviting the strikers to return to work and permitting them to work, under the circumstances here, the Respondent condoned the breach of contract. \* \* \* "

The Board's conclusion was based on a perversion of the stipulated facts as well as a misunderstanding of the doctrine of condonation.

The strikers' only invitation to return to work was at 2:00 p. m. on the day of the strike. It was made, rejected, and never renewed. The strikers continued picketing. This action should not be resurrected as evidence of condonation as the invitation was not accompanied with an indication of waiver of disciplinary action. The Board, in stating its findings, infers that the strikers were given permission to return to work and thereafter a meeting was scheduled the following day for the sole purpose of discussing Christiansen's discharge. At this juncture, Christiansen stood legally discharged and there was no occasion for a meeting solely to discuss his situation. There is no valid justification for the Board's positing the evidence out of its stipulated sequence. In addition, there is not an iota of evidence that the company had any intention of "wiping the slate clean" and forgiving the strikers' misconduct. Nothing was said indicating that the permissible return to work resolved the problem or that it was for any duration other than until an orderly meeting could be held and the matter discussed.

The Board's finding that the company-union meeting was for the purpose of discussing Christiansen's situation is completely unsupported by the facts. Bates would not even permit Christiansen to return to work on the morning following the walkout. Furthermore, Bates had specifically refused to include Christiansen in his invitation to return to work on the day of the walkout.

■ Aside from a total lack of evidence to support the Board's finding, there is an obvious misunderstanding by the Board of the doctrine of condonation. Condonation can be found and is invocable only where there is clear and convincing evidence that the employer has completely forgiven the guilty employee for his misconduct—and agrees to a resumption of company-employee relationship as though no misconduct had occurred. The doctrine prohibits an employer from misleadingly agreeing to return its employees to work and then taking disciplinary action for something apparently forgiven. Such is the teaching of the cases cited by the Board in support of its position here. See Confectionery & Tobacco Drivers and Ware. Union v. NLRB, 312 F.2d 108, 113 (2nd Cir. 1963); NLRB v. E. A. Laboratories, Inc., 188 F.2d 885, 886–887 (2nd Cir. 1951), cert. denied, 342 U.S. 871, 72 S.Ct. 110, 96 L.Ed. 655 (1951); NLRB v. Aladdin Industries, Inc., 125 F.2d 377, 382 (7th Cir. 1942), cert. denied, 316 U.S. 706, 62 S.Ct. 1310, 86 L.Ed. 1773 (1942); Stewart Die Casting Corp. v. NLRB, 114 F.2d 849, 855–856 (7th Cir. 1940), cert. denied, 312 U.S. 680, 61 S.Ct. 449, 85 L.Ed. 1119 (1940).

In Confectionery & Tobacco Drivers and Ware. Union v. NLRB, supra, an agreement was entered into by the company which included a return of all striking employees. It was announced in open court. Despite the agreement and its utterance to the court, the company refused to permit a number of the strikers to return to work. The court properly held that the agreement constituted condonation and the employer could not thereafter rely upon prior unprotected activities of the strikers to deny reinstatement.

This case and others relied upon by the Board are not controlling here because of a lack of evidence in the instant case to demonstrate a willingness on the part of the employer to forgive the improper conduct of the strikers and to "wipe the slate clean."

■ The applicable standards of the doctrine of condonation are found in NLRB v. Marshall Car Wheel & Foundry Co., 218 F.2d 409 (5th Cir. 1955) and Plasti-Line, Inc. v. NLRB, 278 F.2d 482

(6th Cir. 1960). The court in *Plasti-Line*, in following *Marshall Car*, stated:

"'Where * * * misconduct is clearly shown, condonation may not be lightly presumed from mere silence or equivocal statements, but must clearly appear from some positive act by an employer indicating forgiveness and an intention of treating the guilty employees as if their misconduct had not occurred. We think respondent correctly asserts that the essential elements of condonation, i. e. forgiveness and the resumption of the former relationship between the strikers and respondent, are patently lacking here. * * *'" Id. 278 F.2d at 487.

We conclude that there is no substantial evidence to support the Board's conclusion. The Board's decision, if upheld, would reward the guilty and penalize the victim. Such a conclusion violates the spirit and purpose of the Act in that it is calculated to stimulate and aggravate ill-feeling between management and employees rather than promote industrial peace.

The order of the Board is set aside in its entirety.