27 F.3d 565
 146 L.R.R.M. (BNA) 2704
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
VIRGINIA MANUFACTURING COMPANY, INCORPORATED (VAMCO), Petitioner,
NATIONAL LABOR RELATIONS BOARD, Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
VIRGINIA MANUFACTURING COMPANY, INCORPORATED (VAMCO), Respondent.
 Nos. 93-1824, 93-1955.
 United States Court of Appeals, Fourth Circuit.
 Argued April 11, 1994.
Decided June 29, 1994.
 
 On Petition for Review and Cross-Application for Enforcement of an Order of the National Labor Relations Board. (11-CA-14621-2, 11-CA-14621-3, 11-CA-14621-4, 11-CA-14621-5, 11-CA-14766)
 Argued: Gary Williams Wright, Wimberly & Lawson, Knoxville, TN. On brief: Kevin M. Dorris, Wimberly & Lawson, Knoxville, TN, for petitioner.
 Argued: Joseph Anthony Oertel, National Labor Relations Board, Washington, D.C. On Brief: Jerry M. Hunter, Gen. Counsel, Yvonne T. Dixon, Acting Deputy Gen. Counsel, Nicholas E. Karatinos, Acting Assoc. Gen. Counsel, Aileen A. Armstrong, Deputy Assoc. Gen. Counsel, Howard E. Perlstein, Supervisory Atty., National Labor Relations Board, Washington, D.C., for respondent.
 
 
 1
 N.L.R.B.
 
 
 2
 ENFORCEMENT GRANTED.
 
 
 3
 Before HALL and LUTTIG, Circuit Judges, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 
 OPINION
 PER CURIAM
 
 4
 Virginia Manufacturing Co. (VAMCO) petitions for review of an order of the National Labor Relations Board (NLRB) finding that VAMCO had violated Secs. 8(a)(1) and 8(a)(3) of the National Labor Relations Act (the Act).[1] The NLRB cross-petitions for enforcement of its order. We deny the petition for review and grant enforcement of the order.
 
 I.
 
 5
 VAMCO manufactures metal and wood cabinets and containers at a factory in Pennington Gap, Virginia. The company has around 120 employees, including supervisors and management.
 
 
 6
 On June 20, 1991, a group of employees decided to strike for improved working conditions. They went to each of the four buildings in the factory to drum up support. About twenty employees struck on the first day, but the number of strikers soon doubled. The strikers contacted the United Mine Workers to seek help in organizing. Enough authorization cards were collected to force a representation election, and one was scheduled for August 9, 1991.
 
 
 7
 With many employees still crossing the picket line, tempers flared. The company filed an unfair labor practice charge with NLRB Regional Counsel alleging that strikers had used threats and vandalism in order to coerce and intimidate non-striking employees. Thirty affidavits were filed in support of the charge.
 
 
 8
 NLRB Regional Counsel postponed the election. On the date the election would have been held--August 9, 1991--the striking employees made an unconditional offer to return to work.
 
 
 9
 On the following Monday, August 12, the forty or so striking employees reported for work. At the direction of company supervisors, they gathered in a small break room. Charlie Fugate, VAMCO's Executive Vice President, addressed the assembly of returning strikers. He explained that, because of the strike, there were not enough materials on hand to immediately resume full production. He said that eight employees could work that day, and that the rest would be called back as production increased. The employees for whom work was not available peacefully left the premises and set up an "informational" picket line that no longer interfered with non-striking employees.
 
 
 10
 On August 30, 1991, NLRB Regional Counsel advised both VAMCO and the union that it planned to file unfair labor practice charges against the union.[2] The union agreed to settle the charges, and, though the compliance period had to be extended once, the charges were settled.
 
 
 11
 In any event, on September 4, 1991, perhaps buoyed by the NLRB's decision to charge the union, VAMCO took the step that led to this case--it fired five employees because of alleged misconduct during the strike. The employees filed unfair labor practice charges on account of their terminations, and the union supplemented the charge with a couple of incidents of alleged company coercion that had occurred at the outset of the strike.
 
 
 12
 After a five-day hearing before an administrative law judge (ALJ), the company was found to have violated Sec. 8(a)(1)[3] by discharging four (Birman, Duncan, Crusenberry, and Woodard) of the five employees and by threatening to discipline employees who joined the strike. The ALJ found no violation, though, in an incident in which the plant superintendant warned Birman as he left to join the strike, "Steve, it's your job."
 
 
 13
 The ALJ ordered VAMCO to cease and desist from the violations, to reinstate the four workers with back pay, and to post a remedial notice to employees.
 
 
 14
 Both sides filed exceptions to the ALJ's decision. The NLRB affirmed the violations found by the ALJ and, unlike the ALJ, found that Hurd's comment to Birman also violated Sec. 8(a)(1). The NLRB also cited Sec. 8(a)(3)[4] in support of its finding that the firing of the four employees was illegal.
 
 
 15
 VAMCO petitions for review under 29 U.S.C. Sec. 160(f); the NLRB petitions for enforcement under 29 U.S.C. Sec. 160(e). Where the NLRB's findings of fact are supported by substantial evidence on the record as a whole, they are "conclusive." Universal Camera Corp. v. NLRB, 340 U.S. 474, 493 (1951).
 
 II.
 
 16
 A striking employee remains an "employee" under the Act, 29 U.S.C. Sec. 152(3), and he may not generally be fired or refused reinstatement at the conclusion of the strike. NLRB v. Fleetwood Trailer Co., 389 U.S. 375, 378 (1967).[5] On the other hand, employee discipline that neither coerces nor discriminates on account of activity protected by the Act does not implicate the Act. NLRB v. Fansteel Metallurgical Corp., 306 U.S. 240, 254 (1939). Because serious misconduct by strikers is not protected by the Act, discipline, including refusal to reinstate the guilty employee, for such misconduct does not violate Sec. 8(a)(1) or 8(a)(3). Paramont Mining Corp. v. NLRB, 631 F.2d 346, 349 (4th Cir.1980); NLRB v. Pepsi Cola Co. of Lumberton, Inc., 496 F.2d 226, 228 (4th Cir.1974); Oneita Knitting Mills, Inc. v. NLRB, 375 F.2d 385, 390 (4th Cir.1967). On the other hand, where an employer condones strike misconduct and reinstates the offending striker, the employer may not thereafter rely on the misconduct to discharge the employee. NLRB v. Community Motor Bus, 439 F.2d 965, 967-968 (4th Cir.1971).
 
 
 17
 VAMCO alleges that Birman, Duncan, Crusenberry, and Woodard engaged in serious strike misconduct.[6] The ALJ did not decide whether the misconduct charges were true, because he found (and the NLRB agreed) that VAMCO had condoned any misconduct when Fugate told all strikers that they would be reinstated as production increased.
 
 
 18
 This finding is supported by substantial evidence. The classic definition of condonation was provided by the Seventh Circuit in Jones & McKnight, Inc. v. NLRB, 445 F.2d 97, 103 (7th Cir.1971):
 
 
 19
 The key element of condonation is a clearly evidenced intention and commitment on the part of the employer to overlook the misconduct and to permit a continuation or resumption as though no misconduct had occurred.
 
 
 20
 VAMCO argues that, when Fugate stated that all strikers would be called back, he was not forgiving strike misconduct, but instead was simply trying to calm a potentially volatile situation. Fugate's own testimony refutes the company's argument. Fugate acknowledged in his testimony before the ALJ that he intended, when he gave his speech to the strikers, to recall all of them.[7] Moreover, he also agreed that his subsequent decision to fire Duncan, Birman, Crusenberry, and Woodard was a "change of heart." The doctrine of condonation protects employees from such "changes of heart":
 
 
 21
 The doctrine prohibits an employer from misleadingly agreeing to return its employees to work and then taking disciplinary action for something apparently forgiven.
 
 
 22
 Packers Hide Ass'n v. NLRB, 360 F.2d 59, 62 (8th Cir.1966).
 
 
 23
 Substantial evidence supports the NLRB's finding that Fugate unconditionally reinstated the four employees notwithstanding his belief that they had engaged in strike misconduct. The slate was wiped clean, misconduct forgiven, and the employment relationship unconditionally renewed.[8] The order resulting from the NLRB's conclusion that VAMCO violated Secs. 8(a)(1) and (3) by later firing the employees is therefore enforced.
 
 III.
 A.
 
 24
 On the day the strike began, plant superintendent Hurd spoke to about a dozen assembled workers. He told them that anyone who did not report to work the following day would be given an unexcused absence.[9] Company policy at the time was that an employee who had three or four unexcused absences could be fired. The ALJ and NLRB both found that Hurd's statement constituted a threat of reprisal for engaging in activity protected by Sec. 7 of the Act, in violation of Sec. 8(a)(1). See NLRB v. Nueva Engineering, Inc., 761 F.2d 961, 966 (4th Cir.1985). This finding is clearly supported by substantial evidence, and it is therefore enforced.
 
 B.
 
 25
 Earlier that same day, Hurd asked Birman what he was going to do. Birman said he thought he would join the strike, and he tried to explain the strikers' demands for better working conditions. Hurd shrugged his shoulders and cut off Birman's explanation. Hurd said, "Steve, it's your job."
 
 
 26
 The ALJ held that this statement did not violate Sec. 8(a)(1) because it was made before Hurd knew that the workers were engaging in conduct protected by Sec. 7. The NLRB reversed this finding,[10] and with good reason. Hurd knew that a concerted work stoppage was underway, and he surely suspected its aim was to improve employment conditions in some fashion. Birman even tried to explain the nature of the strike, and Hurd declined to hear about it. Substantial evidence supports the NLRB's finding, and it is enforced.
 
 
 27
 In sum, VAMCO's petition for review is denied, and the order of the NLRB is enforced in its entirety.
 
 
 28
 PETITION FOR REVIEW DENIED; ENFORCEMENT GRANTED
 
 
 29
 LUTTIG, Circuit Judge, concurring in part and dissenting in part:
 
 
 30
 I join in Part III of the majority's opinion, but dissent from Part II because this court's decision in N.L.R.B. v. Community Motor Bus, 439 F.2d 965, 967 (4th Cir.1971), squarely controls our disposition of the condonation issue and requires us to hold that VAMCO did not condone any of its employees' strike misconduct.
 
 
 31
 In Community Motor Bus, following illegal picketing, the union officials specifically asked management whether the strikers were fired. The employer's superintendent responded by reassuring the union officials that "[the strikers] were not fired, that the company wanted all the strikers back," and that he "hope[d] that all the strikers would return...." Id. Reversing the Board's finding of condonation, we held that not even these statements "established a clear showing of an attitude of forgiveness and a willingness to 'wipe the slate clean.' " Id. at 967-68 (citations omitted); accord, e.g., Jones & McKnight, Inc. v. N.L.R.B., 445 F.2d 97, 103 (7th Cir.1971) ("Condonation can be found and is invocable only where there is clear and convincing evidence that the employer has completely forgiven the guilty employee for his misconduct ....") (quoting Packers Hide Association v. N.L.R.B., 360 F.2 59, 62 (8th Cir.1966). If the statements made by management in Community Motor Bus were insufficient to establish condonation, a fortiori the statements made in this case do not establish condonation. Here, management was not responding to a direct question as to whether the union employees were being fired; nor did it express any "hope" that the employees would return, much less state that it "wanted" them to return. Indeed, the only relevant testimony in the record is that the management representative who made the one statement that workers would be rehired believed at the time that the company was legally required to rehire the strikers, a belief that belies any suggestion of condonation.
 
 
 32
 We are, as a matter of court rule, and out of respect for principles of stare decisis, bound by our prior precedents. If there be a case the disposition of which is dictated by a prior decision, then it is this by Community Motor Bus. The majority most assuredly recognizes as much, as evidenced by its transparent effort at distinction. Not only in this case was there no "fully consummated renewal of the employment relationship," see ante at 7 n. 8; standing alone, whether there was or not is irrelevant (and was viewed as irrelevant by the court in Community Motor Bus ) to whether there was management condonation of the workers' prior conduct. Were it otherwise, there would, as a matter of law, be condonation of prior conduct in every instance where employees are rehired, regardless of the evidence of affirmative disapproval.
 
 
 33
 Because Community Motor Bus directly controls this case, and because this panel lacks the authority to decide this case in a way that contravenes our prior precedent, I respectfully dissent.
 
 
 
 [1]
 29 U.S.C. Sec. 151 et seq
 
 
 [2]
 See Sec. 8(b)(1)(A) of the Act, 29 U.S.C. Sec. 158(b)(1)(A), which prohibits labor organizations from restraining or coercing employees in the exercise of the employees' Sec. 7 rights ("to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and ... to refrain from any or all of such activities except to the extent that [a collective bargaining agreement may require membership in a union]")
 
 
 [3]
 29 U.S.C. Sec. 158(a)(1), prohibiting employer interference, restraint, or coercion of employees in the exercise of their Sec. 7 rights
 
 
 [4]
 29 U.S.C. Sec. 158(a)(3), prohibiting "discrimination in regard to hire or tenure of employment ... to discourage membership in any labor organization."
 
 
 [5]
 An economic striker's position may be filled during the strike by a temporary or permanent replacement. If the hiring of permanent replacements leaves fewer jobs vacant at the end of the strike than there are strikers seeking reinstatement, the employer need reinstate only as many strikers as there are available positions, so long as it does not discriminate among the returning strikers on account of the fervor of their union sentiments. NLRB v. Mackay Radio & Telegraph Co., 304 U.S. 333, 346 (1938)
 
 
 [6]
 The misconduct involved rock throwing, threats of physical harm, and attempted vandalism with "jack rocks."
 
 
 [7]
 Fugate admitted that he did not know that he could legally fire any of the strikers when he gave his speech. Though VAMCO argues that this testimony shows that Fugate did not intend to waive the company's right to fire for misconduct, we agree with the NLRB that it shows just as clearly that Fugate intended to reinstate everyone without reservation
 
 
 [8]
 The fully consummated renewal of the employment relationship distinguishes this case from Community Motor Bus, 439 F.2d 965, 967-968, where we held that an employer's statement during the strike that it "wanted" all of its striking employees to come back fell short of "an unequivocal invitation to the strikers to return to work regardless of their misconduct." We also pointed out that, even if we assumed that the statement was such an invitation, the strikers had rejected it by remaining on strike
 
 
 [9]
 The absentee calendars for Duncan, Birman, Crusenberry and Woodard were in fact marked "unexcused" during the strike
 
 
 [10]
 The NLRB's disagreement with the ALJ does not change the standard for our review, because the NLRB's disagreement did not arise within the one area--credibility of witnesses--in which it owes the ALJ's finding particular deference. NLRB v. Frigid Storage, Inc., 934 F.2d 506, 509 (4th Cir.1991); American Thread Co. v. NLRB, 631 F.2d 316, 320 (4th Cir.1980)