**Robert BARTELS, Plaintiff,**

**v.**

**NEW YORK LITHOGRAPHERS' AND PHOTO–ENGRAVERS' UNION NO. ONE–P formerly known as New York Photo-Engravers' Union No. One, Defendant.**

**No. 66 Civ. 1089.**

United States District Court
S. D. New York.

Dec. 10, 1969.

Solomon D. Monshine, New York City, for plaintiff.

Schenck & Schenck, New York City, for defendant; Moss K. Schenck, New York City, of counsel.

## OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

LEVET, District Judge.

Plaintiff, Robert Bartels, relying for jurisdiction on Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, brings suit against the defendant, New York Lithographers' and Photo-Engravers' Union No. One-P (hereinafter "the union"), alleging breach of the union's duty of fair representation. Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, the issue of liability was tried before this court without a jury.

The contentions of the parties may be stated generally as follows:

### PLAINTIFF'S CONTENTIONS

1. That plaintiff was wrongfully discharged from his position at Rogers Engraving Co., Inc., New York City (hereinafter "Rogers") on September 25, 1964.

2. That the union breached its duty of fair representation by refusing to process the allegedly wrongful discharge to arbitration.

### DEFENDANT'S CONTENTIONS

1. That plaintiff should be barred from maintaining this action because he instituted a prior proceeding before the National Labor Relations Board against Rogers only.[1]

---

1. Plaintiff's unfair labor practice charge against the employer was withdrawn on August 12, 1965 after a settlement was agreed upon. The union was not named as a party in the charge filed before the NLRB. (Stenographer's minutes of trial, October 14, 1969, 60–62; PTO, p. 2).

2. That plaintiff's discharge by the employer was not wrongful as it was provoked by plaintiff.

3. That the union discharged its obligation as collective bargaining representative when its executive board conducted hearings on Bartels' claim of wrongful discharge, determined that the discharge had been for cause, and the union membership voted to affirm the decision of the executive board.

## JURISDICTION

■ Although the union suggests that plaintiff's decision to file an unfair labor practice charge solely against the employer constituted an election of remedies which should bar this subsequent action against the union, I believe that the Supreme Court's jurisdictional analysis in Vaca v. Sipes, 386 U.S. 171, 187, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), sanctions separate actions against an employer and union in a situation involving the issues of wrongful discharge and breach of the duty of fair representation.

After hearing the testimony of the parties and examining the pleadings, the exhibits and the proposed findings of fact and conclusions of law submitted by counsel, I make the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Plaintiff was employed as a "black and white finisher" by Rogers from June 1960 to September 25, 1964. (SM 7–8)

2. The union was the recognized collective bargaining agent for all photoengraving employees at Rogers, including the plaintiff, at all relevant times herein. (PTO, pp. 1, 2)

3. While in the employ of Rogers, plaintiff worked the "second night shift" from 11:30 P.M. to 6:30 A.M. (SM 8–9)

4. On May 20, 1964, plaintiff wrote a letter to the union executive board complaining that fellow workers on the second night shift were antagonistic toward him and alleging "uneven distribution of work and privledge [sic] of going

home after the work is done." He also declared that on July 3, 1963 he had been designated unfairly to do a "long winded" or difficult assignment in the shop, and that a union official "advised me to write a letter to the board, but which I did not do [until] now." (Pl. Ex. 1)

5. Upon receiving plaintiff's letter, the union executive board invited him and other workers on the same shift to appear at the board meeting of June 8, 1964. The minutes of the meeting report the following:

"Rogers Eng., R. Bartels, V. Manzo, P. Dondero, foreman and T. Higgins ch[airman] appeared on invitation in re Mr. Bartels letter regarding treatment received in shop, Mr. Bartels stated A. Rogers wanted to bring charges against him on the grounds he was spoiling work. * * * Mr. Dondero stated that employer knows of early breaks but all cards are punched. * * * Mr. Higgins stated that Arnold Rogers wanted Mr. Bartels and the routers to stay over and see him, the routers stayed but Mr. Bartels went home. Mr. Bartels still feels that they are trying to get rid of him." (Joint Exhibit AA)

6. Subsequent to the meeting, plaintiff continued to be employed on the second night shift at Rogers. (Stipulation of the parties: SM, December 2, 1969, 102)

7. On July 8, 1964, Arnold E. Rogers, chairman of the board of Rogers, sent a letter to plaintiff informing him "that the Management of this company will no longer tolerate your actions towards the Management of this company and your fellow employees. I will no longer tolerate the poor craftsmanship and quality of your work. This is to serve as a warning to you, that any further of the above action by you, I will be forced to inform the Night Superintendent and your foreman to dismiss you." (Deft. Ex. F; SM, October 14, 1969, 63–64)

8. Plaintiff made no independent effort to discuss the letter from Rogers with any union representative, but not-

ed that a copy of the letter had been submitted to the union. (SM 70–72)

9. On or about August 12, 1964, plaintiff "went home early" approximately one hour before the scheduled quitting time, without asking permission from the foreman on the shift. (SM 18)

10. Martin Brager, plant superintendent for Rogers, advised the plaintiff on or about August 12, 1964 that plaintiff could not leave his shift early without permission of the foreman. Henry Mazejy, night chairman for the union, was also present when Mr. Brager spoke to Bartels. (SM 25–26, 39–41)

11. On one day during the first two weeks in September, plaintiff "went home early" approximately twenty to twenty-five minutes before the scheduled quitting time, again without asking the foreman's permission. (SM 16–17)

12. Plaintiff received a letter from Brager, dated September 18, 1964, which reads as follows:

"Dear Bob:

"On the 17th of September you were given notice by me that your employment with this company will terminate as of September 25, 1964 because you walked out before your shift was up on September 16, 1964. This is one week's advance notice.

"This was the second warning given to you by me in the present [sic] of Henry Mazejy, Night Chapel Chairman, of this company. The reason for this dismissal is because you were warned that you cannot leave this shop until your shift is up. This was the second time that you walked out before your shift was up.

"It is apparent from your actions, that you are not willing to conform with Union and Shop Regulations, which constitutes cause for dismissal.

"Yours truly,

"ROGERS ENGRAVING CO., INC.

"Martin Brager,
"Night Superintendent"

(Deft. Ex. B; SM 42–43)

13. The collective bargaining agreement between Rogers and the union which was in effect at all relevant times herein provides that:

"Employer reserves the right to discharge a worker for justified cause.

\* \* \* \* \*

"A Joint Industrial Council \* \* \* shall be created to whom shall be referred for adjustment or decision, all matters involving an interpretation or application of the agreement relative to which a dispute has arisen." (Deft. Ex. A–1: Collective Bargaining Agreement, pp. 23, 24)

14. The union constitution states that:

"Any working superintendent or foreman in charge of a photo-engraving department \* \* \* may have the right to hire and discharge any or all subordinates under him and he shall be responsible for the proper conduct of his department to the proprietor of his firm alone; provided all rules and regulations of the Union are observed." (Deft. Ex. C: Union constitution, pp. 32–33)

15. Upon receiving the letter of discharge, plaintiff called Thomas O'Brien, the business manager of the union, who told plaintiff to "(b)ring it down to the [next meeting of the executive] board on [the following] Monday night" to submit it for consideration. (SM 43, 48–49)

16. The executive board of the union is empowered "to hear and decide on all grievances and charges \* \* \*." (Deft. Ex. C: Union constitution, p. 26)

17. On September 28, 1964, the plaintiff appeared before the union's executive board, at which time he was afforded a full opportunity to be heard. (SM 43–45)

18. The minutes of the executive board meeting of September 28, 1964 contain the following information about Bartels' hearing:

"Robert Bartels finishes on 3rd Shift at Rogers Eng. Co. A letter from Rogers was read \* \* \* re-

garding discharge for leaving plant before shift is finished. Robert Bartels is requesting reinstatement claiming his discharge was unjustified. This was the third time he left plant before shift was completed. The first time there was nobody in authority in the plant. He punched out and was no [sic] paid for the same. The second time he told the chairman and the supervisor that he was leaving. He stated that other men received early breaks but he did not and felt he was being discriminated against. Felt that if reinstated still entitled to early breaks. It was pointed out that the union negotiates for a certain amount of hours in the contract and is obliged to guarantee that these and only these conditions are abided by.

"Matter left in officers' hands to exercise their good offices in an effort to get Bartels reinstated." (Deft. Ex. H)

19. After the meeting of September 28, 1964, both Frank McGowan, president of the union, and O'Brien informed the plaintiff that they had "spoken to the employer and attempted to have me reinstated." (SM 48–49)

20. On October 13, 1964, the plaintiff appeared again before the executive board. (SM 46)

21. The minutes of the executive board meeting of October 13, 1964 contain the following relevant entry:

"Robert Bartels

"Still feels his discharge was discriminatory and special rules should not be established for him.

"The opinion was that he was fired for good cause for leaving the job on three occasions without permission. The case was rehashed. He is requesting reinstatement with all back pay and vacation credits for that period. The ex. board reaffirms its previous position [Bartels] having been previously warned and discharge is justified. Ed Avedis voted no." (Deft. Ex. I)

22. Under the union constitution, "(a)ll actions and recommendations of the Executive Board shall be reported to the regular * * * meetings of the Union in the form of a motion. The motion to prevail shall be, that report be received, actions approved of, and recommendations be taken up immediately thereafter." (Deft. Ex. C: Union constitution, p. 26)

23. On November 2, 1964, plaintiff appeared before approximately 500 members in attendance at a regular union meeting, and appealed to the membership to reverse the determination of the executive board that the discharge was not wrongful. (SM 50–52, 81)

24. The minutes of the membership meeting on November 2, 1964 record the following action:

"Robert Bartels explained to the members his side of the problems which brought about his discharge from Rogers Eng. Co. & asked the members to reverse the executive board's ruling of [October 13] that he Mr. Bartels discharge was for cause. Executive board members Gene Sheehan, Ed. Kelly, Tom Finn, Bob Gilmore, Bill Carrol, John Garvey, Charles Lavezoli, V[ice] Pres. O'Leary & Pres. McGowan reviewed the executive board's action & requested the members to support their decesion [sic]. By a voice vote the action of the executive board was concurred in by the members." (Deft. Ex. J)

25. The membership vote in support of the executive board's recommendation was "overwhelming." (SM 90)

26. Since September 1964 plaintiff has continued to be a member of the union in good standing. He has reported to the union office "from time to time" and has been assigned by the union to work in different engraving houses in New York City. (SM 64, 95–96)

## DISCUSSION

A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of

the collective bargaining unit is arbitrary, discriminatory, or in bad faith. Vaca v. Sipes, supra, at 190, 87 S.Ct. 903, 17 L.Ed.2d 842; see also NLRB v. SuCrest Corporation, 409 F.2d 765, 769 (2nd Cir. 1969); Desrosiers v. American Cyanamid Company, 377 F.2d 864, 868 (2nd Cir. 1967).

▮ In administering grievance and arbitration machinery as statutory agent of the employees, a union must, in good faith and in a non-arbitrary manner, make decisions as to the merits of particular grievances. An individual employee has no absolute right to have his grievance taken to arbitration. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion. Vaca v. Sipes, supra, at 191, 194, 87 S.Ct. 903; Humphrey v. Moore, 375 U.S. 335, 349, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).

▮ In order to satisfy his burden of proof in this action against the union, the plaintiff must establish by a fair preponderance of the credible evidence (1) that he pursued the grievance procedures provided under the union constitution and the collective bargaining agreement; (2) that the discharge was wrongful and the grievance, therefore, meritorious; (3) that the union engaged in conduct arbitrary, discriminatory or in bad faith as to plaintiff.

On the record before the court, plaintiff has not established his case.

Bartels' claim is based on his own testimony, one letter he sent to the union and his argument that the defendant should have processed his grievance to arbitration before the Joint Industrial Council provided for in the collective bargaining agreement between Rogers and the union.

However, Bartels does not deny that the employer, under the terms of the agreement, reserved the right to discharge a worker for justified cause. Nor does he deny that the union could decide in the good faith exercise of its discretion that the claim of wrongful discharge was not meritorious.

On the record submitted, I cannot say that plaintiff's vague and unsupported allegations of unfair treatment by other employees constitute substantial evidence of a wrongful discharge by Rogers.

It is noteworthy that plaintiff has failed to call any employer representative, union official or fellow worker to testify about his difficulties on the job.

▮ The union does not breach its duty of fair representation merely by a decision not to process a grievance to arbitration. There is no affirmative evidence that the union acted on Bartels' complaints with arbitrariness, discrimination or bad faith.

The defendant has demonstrated on the record its timely response to any requests by Bartels for consideration of his personal grievances. Indeed, plaintiff admitted in a letter to the union that he had been requested to provide written information to the executive board about an incident allegedly occurring on July 3, 1963, but had neglected to address a written communication to the board until May 20, 1964. (See Finding of Fact 4)

The evidence further establishes that the union complied fully with its own constitution by providing a fair hearing before the executive board on June 8, 1964, after which plaintiff continued in the employ of Rogers; two hearings on September 28, 1964 and October 13, 1964, after which the executive board decided that plaintiff's discharge had been justified; a hearing before the union's membership on November 2, 1964, after which the membership voted to affirm the decision of the executive board not to dispute the employer's assertion that the discharge had been for justified cause.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the parties and the issues pursuant to 29 U.S.C. § 185.

 2. Plaintiff has failed to establish by a fair preponderance of the credible evidence that his discharge was wrongful or that the union breached its duty of fair representation.

3. Defendant is entitled to dismissal of the complaint with prejudice and judgment on the merits, with costs.

Settle judgment on notice in accordance with the provisions herein.