Christina SZARKA, Plaintiff,

v.

REYNOLDS METALS COMPANY and United Steel Workers of American, Local 450–A, Aluminum, Brick, and Glass Division, Defendants.

Nos. 97–CV–1558, 98–CV–0647.

United States District Court,
N.D. New York.

Aug. 26, 1998.

Poissant, Nichols Law Firm, Malone, NY (Kevin F. Nichols, of counsel), for Plaintiff.

Chamberlain, D'Amanda Law Firm, Rochester, NY (Lucinda O. Lapoff, of counsel), for Defendants.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

The present action arises out of alleged violations of Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and common law causes of action for negligence. Plaintiff alleges that the Defendants Reynolds Metals Company ("Reynolds") and United Steelworkers of America, Local 450–A, Aluminum, Brick and Glass Division (the "Union") sexually harassed and discriminated against her and that the Union negligently hired, retained, and supervised Union officials and stewards. The Union has moved pursuant to FED.R.CIV.PRO. 56 for summary judgment dismissing the Complaint in its entirety. Plaintiff has cross-moved pursuant to FED.R.CIV.PRO. 15 to amend the Complaint.

## I. BACKGROUND

### A. Facts[1]

Plaintiff Christina Szarka has been employed by Reynolds for approximately twenty years. By the fall of 1993, plaintiff was employed as a cryolite operator in the Recovery Department, a classified position. (Complaint ¶¶ 9, 10, 12).

In late 1993, Reynolds shut down a portion of the St. Lawrence Reduction plant which resulted in a reduction in force. (Cook Aff. ¶¶ 4, 5).

The collective bargaining agreement ("CBA") entered into by the defendants governed the layoff procedures. Pursuant to the CBA, the least senior union members were laid off first. (CBA, Art. XII, § 2). Because of her level of seniority, plaintiff was not laid off. Due to the reductions in force in each department, however, plaintiff was reduced in rank and wage grade from her classified position in the Recovery Department to an unclassified position in the Labor Pool on November 1, 1993. (CBA, Art. XII, § 12; Complaint ¶ 13).

From time to time plaintiff was transferred back to the Recovery Department to fill in for temporary vacancies or when extra workers were required. (CBA, Art. XIV, § 2; Cook Aff. ¶ 7). From November 4 to

---

1. The following facts are elicited from the Complaint and the affidavits/affirmations submitted by the parties hereto. The majority of the facts come from affidavits submitted by the Union. Plaintiff has not submitted any affidavits or documentary evidence refuting the facts in the Union's affidavits or otherwise setting forth her own version of the facts. See FED.R.CIV.PRO. 56(e). Further, plaintiff has failed to comply with the requirements of Local Rule 7.1(f) by providing a "short and concise statement of the material facts as to which it is contended that there exists a genuine issue." The Court, therefore, must accept the Union's version of the facts as true. See N.D.N.Y. Local R. 7.1(f).

November 27, 1993, plaintiff worked in her former department (Recovery) in a temporary capacity at her prior wage. (Cook Aff. Ex "C").

On November 25, 1993, plaintiff "bid" for a position in the Cast House, another classified position. (Cook Aff., ¶ 8). The procedure for filling classified jobs is governed by the CBA which requires that the position be filled with the most senior employee who is capable of performing the work. (CBA, Art. XI, § 2). Plaintiff was placed in the Cast House.

In the month of December 1993, employees on plaintiff's former shift in the Recovery Department (the "B" shift) worked certain days that entitled them to overtime compensation. (*See generally* CBA, Art. VII). Because plaintiff was reduced to the Labor Pool and/or because of her new position in the Cast House, plaintiff was on the "A" shift. The "A" shift did not work certain holidays on which the employees were entitled to overtime. In addition, plaintiff was in an initial period of disqualification due to her transfer to the Cast House; thus, her transfer also disqualified her from receiving overtime during the month of December, 1993. (Cook Aff., ¶ 10).

A permanent vacancy was created in the Recovery Department due to a retirement. Accordingly, on January 3, 1994, plaintiff was recalled to fill this vacancy at her initial wage classification. (Complaint, ¶ 13, Cook Aff., ¶ 14).

Plaintiff claims that she was unfairly treated in the reduction procedure and the subsequent recall of the reduced employees. (Complaint, ¶ 13). Plaintiff also thought that a more junior, male employee, Mark Richards, was receiving better treatment than she. (Complaint, ¶ 14). Richards was reduced to the Labor Pool at the same time as plaintiff. (Cook Aff., ¶ 15; June 22, 1998 Peets Aff., Exs. "C", "D"). On September 4, 1994 (after plaintiff had been recalled to Recovery), Richards was recalled to the Recovery Department at a time when there were no vacancies, thereby adding one classified person to the department. On September 19, 1994, another employee, Bob McGee, bid out of the Recovery Department and was not replaced. Thus, the Department was reduced by one person, thereby returning to its initial number of classified persons. (Cook Aff., ¶ 16).

In September 1994, plaintiff approached Mr. Gary Cook, the then Union shop steward of Reynolds, requesting to submit a grievance. (Cook Aff., ¶ 14). Plaintiff's grievance alleged that Reynolds failed to assign her to temporary vacancies in the Recovery Department during December 1993. (Cook Aff., Ex. "B"). Plaintiff felt that Reynolds was not honest with her when stating the reasons she was reduced to the Labor Pool and that she was discriminated against when Richards was recalled when there were no vacancies in the Recovery Department. (Cook Aff., Ex. "C"). Plaintiff apparently sought to be paid lost wages and overtime to which she would otherwise have been entitled had she not been reduced to the Labor Pool and had she not been placed in the Cast House. (Cook Aff., Ex "B"). There is no evidence, however, that plaintiff ever submitted or sought to submit any grievance or complaint regarding sexual harassment.

On September 29, 1994, at Step Two of the Grievance Procedure, Larry Alderman, the supervisor of the Recovery Department, denied the grievance stating that the CBA was not violated. (Alderman Letter dated Sept. 29, 1994). The Union then processed the grievance to Step Three in accordance with the CBA. The grievance remained at Step Three until it was remanded back to Step Two for additional fact finding in early 1997. The parties offer no explanation why the grievance remained at Step Three for over two years.

On January 9 and February 20, 1997, meetings were held regarding plaintiff's grievance at which time the parties allegedly agreed on the facts giving rise to plaintiff's grievance. (DeRosie memorandum dated March 3, 1997). Based upon these facts and the meetings with plaintiff, the grievance was again denied on the basis that there was no violation of the CBA. The grievance was again referred to Step Three in the spring of 1997.

At Step Three the Union attempted to settle the grievance as is required by the CBA. (*See* CBA, Art. VI). By letter dated March 7, 1997, plaintiff's attorney, Mr. Nichols, wrote to the Union's attorneys stating that "[u]nder no circumstances are either the Union or the employer authorized to settle any case or any grievance Ms. Szarka has, except through her attorneys .... [and that] [u]nder no circumstances are you authorized to discuss any settlement or any of these legal issues or grievance issues with my client until or unless I consent."

By letter dated March 10, 1997, the Union's attorneys responded to Mr. Nichols stating that:

the Union does not distinguish, when processing grievances, between members who have consulted an attorney and members who have not. Be assured that the Union will continue to fairly represent Ms. Szarka in her grievance under the terms of the [CBA]. The 'authorization' of grievant's attorney is neither desired nor necessary for the Union to discharge its obligations to Ms. Szarka. I strongly suggest that you advise Ms. Szarka to cooperate with Union representatives in the grievance procedure.

In another letter dated March 10, 1997, Mr. Nichols wrote to the Equal Employment Opportunity Commission ("EEOC"). In a short, two sentence paragraph, Mr. Nichols alleged that plaintiff had been subjected to a hostile work environment comprised of pornography in and about the work place. The paragraph made no reference to the Union. The majority of the letter was devoted to describing the facts surrounding the above-discussed grievance and seemingly was aimed at Reynolds.

Mr. Nichols sent another letter to the EEOC dated March 17, 1997, along with a New Charge Questionnaire. The March 17 letter did not implicate the Union in charges of sexual harassment. Rather, that letter accused the Union of "allowing this situation to continue in that the Union has yet to file a grievance to arbitration."

By letter dated April 23, 1997, James Peets, the President and Business Agent of the Union, wrote to plaintiff stating his belief that the Union could "settle the [ ] grievance on terms acceptable to you." Peets requested that plaintiff submit financial information regarding the amount of lost income to which she believed she was entitled. Mr. Peets requested plaintiff to advise the Union in writing if she did not want the Union to continue to represent her. There was no response this letter.

On June 11, 1997, plaintiff filed a Charge Statement with the EEOC alleging that the Union failed to fairly represent her in the grievance procedure because of her sex and age. By letter dated June 20, 1997, the EEOC requested additional information from plaintiff. Plaintiff failed to submit any additional information.

The EEOC then sent the Union a Notice of Charge of Discrimination and requested the Union to submit a position statement. The Union filed its position statement which essentially reiterated the facts discussed above stating that:

[t]he Union has attempted, without success, to have Ms. Szarka provide the amount of lost income she believes she is entitled so that the Union is in a position to settle her grievance satisfactory to her. She has declined to provide this information and apparently, on the advice of counsel, refuses to discuss the matter with Union officials. Ms. Szarka's attorney has taken the position that any settlement of the grievance must be dealt with through him. Local 450 refuses to do so, and Reynolds would be in violation of the National Labor Relations Act if it dealt with Mr. Nichols as Ms. Szarka's representative rather than Local 450.

On July 24, 1997, the EEOC closed its file on the discrimination claim against Reynolds because it was not filed within the time limit required by law. The EEOC also advised plaintiff of her right to sue Reynolds.

On October 24, 1997, plaintiff commenced the instant lawsuit against Reynolds and the Union. In the meantime, plaintiff's grievance was again remanded to Step Two for fact finding. Another Step Three meeting was held on November 26, 1997.

By letter dated January 27, 1998, the EEOC concluded its investigation of the claims against the Union. The EEOC "determined that it is unlikely that further investigation of the charge would result in finding reasonable cause to believe Title VII ... or the ... [ADEA] were violated." (March 19, 1998 Lapoff Affirmation, Ex. "D"). The EEOC concluded that "[g]iven that you have not provided any information to show that there were similarly situated individuals who were afforded preferential treatment, and the information indicates that you were represented by [the Union] in the grievance process, the evidence does not support your allegations of age-based or gender-based employment discrimination." *Id.* Annexed to the letter was a right to sue letter against the Union.

By letter dated March 17, 1998, Reynolds wrote a letter to the Union stating that "the company attempted on several occasions to resolve this grievance amicably and to the satisfaction of grievant. Following these attempts, the grievant's attorney directed the company not to attempt to negotiate or settle this grievance directly with grievant. As a result of his intervention, there is no further recourse the company can take. Grievance denied."

### B. Procedural History

Plaintiff filed a Complaint against both Reynolds and the Union on October 24, 1997 (the "1997 Complaint"). At the time plaintiff filed the 1997 Complaint, she had not yet received a "right to sue" letter against the Union. By Notice of Motion filed April 15, 1998, the Union moved for summary judgment. In response, plaintiff's attorney acknowledged his error in commencing the lawsuit against the Union without first obtaining a right to sue letter. Having obtained a right to sue letter against the Union on January 27, 1998, plaintiff's attorney filed a virtually identical Complaint on April 24, 1998 (the "1998 Complaint").

By Order dated May 22, 1998, this Court consolidated the October 1997 and April 1998 actions.

On July 6, 1998, plaintiff cross-moved pursuant to FED.R.CIV.PRO. 15 to amend the 1997 Complaint to cure the defect caused by commencing the lawsuit against the Union prior to receiving a "right to sue" letter and to add a cause of action for retaliation against the Union.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, judgment may be entered in favor of the moving party if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, all facts must be construed in favor of the nonmoving party. *Id.; Buttry v. General Signal Corp.,* 68 F.3d 1488, 1492 (2d Cir.1995).

It is equally true, however, that where the moving party has supported the motion by affidavits and/or documentary evidence, the party opposing summary judgment "may not rest upon mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [ ] rule [56], must set forth specific facts showing that there is a genuine issue [of material fact] for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." FED.R.CIV.PRO. 56(e); *BellSouth Telecommunications, Inc. v. W.R. Grace & Co.,* 77 F.3d 603, 615 (2d Cir.1996). "[U]ltimate or conclusory facts and conclusions of law ... cannot be utilized on a summary judgment motion." *Id.* (citing 10A Charles Alan Wright, Arthur R. Miller & Mark Kay Kane, Federal Practice and Procedure § 2738 at 486 & 489 (1993)); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the [necessary] showing . . . .").

The Court is aware of the dangers of summary judgment in connection with a Title VII claim. "Because direct evidence of . . . discriminatory intent will rarely be found, 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (quoting *Gallo v. Prudential Residential Services, L.P.*, 22 F.3d 1219, 1224 (2d Cir.1994)). "However, even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp*, 118 F.3d at 110 (citing *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. denied* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985)).

It is with these standards in mind that the Court addresses the issues presented.

## B. Whether Summary Judgment is Premature

■ "Rule 56(f) states that when it appears that the party opposing a motion for summary judgment cannot 'present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit . . . discovery to be had. . . .' Thus, a party seeking such discovery must file an affidavit explaining (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Hudson River Sloop Clearwater, Inc. v. Dept. of the Navy*, 891 F.2d 414 (2d Cir.1989) (citing *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir.1985)). The party opposing summary judgment "must conclusively justify his entitlement to the shelter of Rule 56(f) by presenting specific facts explaining the inability to make a substantive response as required by Rule 56(e) and by specifically demonstrating 'how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" *SEC v. Spence &*

*Green Chemical Co.*, 612 F.2d 896, 901 (5th Cir.1980); (quoting *Willmar Poultry Co. v. Morton–Norwich Products, Inc.*, 520 F.2d 289, 297 (8th Cir.1975), *cert. denied*, 424 U.S. 915, 96 S.Ct. 1116, 47 L.Ed.2d 320 (1976)).

■ Plaintiff argues that defendant's motion for summary judgment is premature because additional discovery is required. Specifically, plaintiff argues that additional discovery is needed to establish whether employees more junior than she remained in Recovery while she was reduced to the Labor Pool. Plaintiff also claims that she needs discovery of seniority lists, past practices regarding layoff procedures, and grievances filed by other Union members.

The Union, however, has submitted unrefuted evidence establishing the necessary facts. The Union has proffered seniority lists demonstrating that Mark Richards, the only employee in Recovery with less seniority than plaintiff, was reduced to the Labor Pool contemporaneously with plaintiff as a result of the reduction in force. (Peets Aff., Exs. "B."–"E"). The seniority lists further establish that Richards was not recalled to Recovery until eight months after plaintiff. *Id.* According to an affidavit submitted by the Union, Richards was recalled to "replace Bob McGee, who had just been awarded an apprentice position and would be leaving the Department within ten working days per the [CBA]." (Cook Aff., ¶ 16). The Union also has provided the CBA which sets forth the procedures for layoffs, overtime compensation, bidding, recalls, etc.

Plaintiff, by contrast, has not even submitted an affidavit stating her version of the facts giving rise to this lawsuit. Further, plaintiff's Reply to Defendant's Local Rule 7.1(f) Statement of Undisputed Facts is not in compliance therewith and fails to even deny the facts alleged in defendant's Local Rule 7.1(f) statement. Thus, these facts are deemed admitted. N.D.N.Y. LOCAL R. 7.1(f). In addition, this case has been pending since October 1997 without any apparent efforts by plaintiff to conduct discovery. Further, while not dispositive of the matter, plaintiff's attorney has conducted discovery in "companion cases involving the same defendants, . . . but different plaintiff employees . . . who

are also Union members." (June 12, 1998 Nichols affirmation, ¶ 4).

Plaintiff's attorney's affirmation falls far short of demonstrating with specificity what additional facts need to the discovered, how those facts are reasonably expected to create a genuine issue of fact, what effort plaintiff has made to obtain the facts, and why plaintiff was unsuccessful in obtaining those facts. *Hudson River Sloop Clearwater, Inc. v. Dept. of the Navy*, 891 F.2d 414 (2d Cir. 1989); *See* Rule 56(f). For the foregoing reasons, plaintiff has not made an sufficient showing that summary judgment is premature.

### C. Plaintiff's Title VII and New York Human Rights Law Claims

"Claims brought under Section 296 of the New York Executive Law, New York's Human Rights Law, can be analyzed, for purposes of determining sufficiency of the evidence, in a manner virtually identical to those under Title VII." *Gallagher v. Delaney*, 139 F.3d 338 (2d Cir.1998) (citing *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1177 (2d Cir.1996); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304, n. 4 (2d Cir.1995)); *Ferrante v. American Lung Assoc.*, 90 N.Y.2d 623, 665 N.Y.S.2d 25, 687 N.E.2d 1308 (1997) ("The standards for recovery under section 296 of the Executive Law are in accord with Federal standards under title VII of the Civil Rights Act of 1964.") (citations omitted). Accordingly, the following discussion applies equally to plaintiff's first and second causes of action.

### 1. Prerequisite to Filing Suit Pursuant to Title VII—Right to Sue Letter

The 1997 Complaint against the Union is defective because plaintiff had not obtained a "right to sue" letter prior to filing the lawsuit. *See* 42 U.S.C. § 2000e–5(f)(1); *Criales v. American Airlines, Inc.*, 105 F.3d 93 (2d Cir.1997), *cert. denied* —— U.S. ——, 118 S.Ct. 264, 139 L.Ed.2d 190 (1997); *Sheehan v. Purolator Courier Corp.*, 676 F.2d 877, 887, n. 15 (2d Cir.1981), *cert. denied* 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988). Accordingly, the 1997 Complaint is dismissed in its entirety.

Recognizing the defect in the 1997 Complaint, plaintiff filed a virtually identical Complaint—the 1998 Complaint—against the defendants after obtaining a right to sue letter against the Union. This Court consolidated the two Complaints.

Because the 1997 Complaint is now dismissed and because the plaintiff has filed the virtually identical 1998 Complaint, plaintiff's motion to amend the 1997 Complaint is denied as unnecessary.

In the interests of judicial economy, the Court will address the remaining parts of the parties' motions as they apply to the 1998 Complaint.

### 2. Exhaustion of Administration Remedies—Reasonably Related Claims

The Union argues that the causes of action for sexual harassment are not included in, nor reasonably related to, any EEOC charge and, therefore, barred due to plaintiff's failure to exhaust her administrative remedies.

"A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Housing Preservation and Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993) (citing *Stewart v. United States Immigration and Naturalization Serv.*, 762 F.2d 193, 198 (2d Cir.1985); *Almendral v. New York State Office of Mental Health*, 743 F.2d 963, 967 (2d Cir.1984); *Goodman v. Heublein, Inc.*, 645 F.2d 127, 131 (2d Cir.1981); *Kirkland v. Buffalo Bd. of Educ.*, 622 F.2d 1066, 1068 (2d Cir.1980)). The purpose of the exhaustion requirement is to "encourage settlement of discrimination disputes through conciliation and voluntary compliance." *Butts*, 990 F.2d at 1401. The filing requirement provides notice to the party charged with a violation and gives that party an opportunity to comply with Title VII before the commencement of a lawsuit and to participate in conciliation. *Davis v. Weidner*, 596 F.2d 726 (7th Cir.1979).

### a. Whether the Allegations of Sexual Harassment Were Included in an EEOC Charge

■ "[A] charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *See,* 29 C.F.R. §§ 1601.12(b); 1601.7; 1601.9; 1601.12. In this case, plaintiff's attorney submitted two letters—dated March 10 and March 17, 1997—and a verified New Charge Questionnaire to the EEOC. Mr. Nichols' March 10, 1997 letter stated that "Ms. Szarka has been subjected to the same hostile work environment as all females at Reynolds ... She has been subjected to the pornography, graffiti on the walls ... and she has personally observed pornographic magazines in and about the work place." The Union's attorney was copied on the March 10 letter.

The following factors demonstrate that the letters and New Charge Questionnaire were not a valid charge with respect to the Union. First, while not determinative, there is a question whether these letters are in the EEOC's files; they do not appear marked as received like other documents in the EEOC files regarding plaintiff. Second, the EEOC apparently did not view the letters as a charge against the Union. This is evident by the EEOC's failure to serve a Notice of Charge on the Union in accordance with 29 C.F.R. § 1610.14, or to take any other action with respect to the letters. Also, plaintiff's attorney's March 17, 1997 letter concedes that the EEOC "would not accept the [March 10] letter as a complaint." Moreover, the EEOC eventually treated plaintiff's allegations as two separate charges: one against Reynolds and another against the Union. It is unclear to which file, if any, the EEOC attributed the March 10 and March 17 letters.

Third, the March 10 letter did not advise the Union that there were potential allegations of sexual harassment against it. Reading the document evinces allegations of harassment against Reynolds only. The subsequent March 17, 1997 letter was never forwarded to the Union by either plaintiff or the EEOC. Further, the March 17 letter did not mention any claims of harassment on the part of the Union.[2]

Fourth, it seems that plaintiff herself did not view the March letters as sufficient to constitute a charge. On June 11, 1997, plaintiff, through her attorney, filed a formal charge with the EEOC specifically directed at the Union. In that charge, there is no reference to the earlier letters to the EEOC, nor are there any allegations of sexual harassment therein. The June 1997 charge solely alleged that the Union discriminated against plaintiff because it failed to properly represent her on account of her age and sex. This is the Notice of Charge that the EEOC sent to the Union and the charge to which the Union responded. Although EEOC charges generally are construed loosely where the complainant proceeds *pro se,* plaintiff here had the assistance of an attorney. Plaintiff's attorney should have made sure that all allegations of violations of Title VII were included in the formal charge to the EEOC.

Fifth, none of the other correspondence before the Court evidences that plaintiff put the Union on notice of the charge of sexual harassment. Rather, the letters from plaintiff's attorney were, at best, ambiguous with regard to charges of harassment against the Union. Lastly, the Union employees have submitted affidavits stating that plaintiff never complained to them of sexual harassment. Plaintiff has failed to submit any affidavits refuting these facts.

While the EEOC's failure to investigate a particular claim in a charge would not pre-

---

**2.** *The March 17 letter reads in part:*
In [the March 10] letter, I named the complainant, her employer, her racial status and her age. I then went on the describe the hostile work environment of or at Reynolds Metals Company in Massena, New York... I also explained this specific evidence of **age discrimination** took place in 1993. During that entire time the **discrimination** has been ongoing and continuing since both the employer and the union, The Aluminum, Brick, and Glass Workers International Union Local No. 450 ... have allowed this situation to continue in that the union has yet to file a grievance to arbitration. (emphasis supplied).

clude the subsequent commencement of a lawsuit based upon the charge as a whole, *see Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir.1989), the aggregation of the above-listed factors militates against a finding that the letters and the New Charge Questionnaire constituted a charge of sexual harassment filed with the EEOC. Although the formal June 1997 charge filed with the EEOC constituted a proper charge, plaintiff's attorney did not allege sexual harassment in that June 1997 charge. Accordingly, there was no allegation of sexual harassment in a charge filed with the EEOC.

Plaintiff responds that the exceptions to the exhaustion requirement apply. The Second Circuit has "recognized three kinds of situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action." *Butts*, 990 F.2d at 1402.

### b. Whether the Conduct Falls Within the Scope of the EEOC Investigation

■ The first "reasonably related" claim is "essentially an allowance of loose pleading" and allows "claims not raised in the charge to be brought in a civil action where the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Id.* (quoting *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 107 n. 10 (2d Cir.1978)). This type of reasonably related claim essentially was devised to assist *pro se* claimants who file complaints with the EEOC without the assistance of counsel. *Butts*, 990 F.2d at 1402. "[T]he loose pleading allowance is not satisfied by vague, generalized statements. Specific factual allegations must be made in order for the EEOC to be able to investigate them reasonably." *Cooper v. Xerox Corp.*, 994 F.Supp. 429, 432 (W.D.N.Y.1998).

In the present matter, the June 1997 charge filed with the EEOC against the Union stated as follows:

I am represented in collective bargaining with my employer by the [Union]. I have had a grievance with my employer's ac-

tions since 1993. I have attempted to remedy this situation through collective bargaining agreement's grievance procedures, but [the Union] has failed to fairly represent me in this matter. I believe that [the Union] is failing to represent me because of my sex and my age (46) in willful violation of Title VII. . . .

The above-quoted allegation in the EEOC complaint states a claim of sex and age discrimination against the Union arising out of the Union's alleged failure to represent her in her grievance proceedings. There is no mention of any hostile work environment or harassment. The investigation into plaintiff's grievance, the Union's handling of the grievance, and even the underlying reasons for the grievance, would not fall within the scope of and could not reasonably be expected to grow into an investigation of a hostile work environment. *See, e.g., Cooper v. Xerox Corp.*, 994 F.Supp. 429, 433 (W.D.N.Y. 1998) (charge of racial discrimination does not support claim for hostile work environment or harassment); *Harris v. New York City Dept. of Homeless Servs. Eligiblity Investigation Unit*, 1998 WL 205334, at *9 (S.D.N.Y. April 28, 1998) (a charge of gender discrimination and a retaliation claim for filing sexual harassment charges fails to satisfy the reasonably related test); *Tavarez v. Chemical Bank*, 1998 WL 337071, at *3 (S.D.N.Y. June 25, 1998) ("A charge of disability discrimination cannot reasonably be expected to grow out of a charge of discrimination based on national origin."); *DeJesus v. Allstate Ins. Co.*, 1998 WL 241726, at *4 (S.D.N.Y. May 11, 1998) (a claim of redlining is not reasonably related to a charge of racial discrimination). Thus, this exception does not apply.

### c. Retaliation

"The second type of 'reasonably related' claim is one alleging retaliation by an employer against an employee for filing an EEOC charge." *Butts*, 990 F.2d at 1402. Plaintiff's Complaint does not allege retaliation. Plaintiff, however, has cross-moved to amend her Complaint to add a cause of action for retaliation. For the reasons discussed below, that motion is denied. This exception, therefore, is inapplicable.

#### d. Allegations of Further Incidents of Discrimination

■ "The third type of 'reasonably related' claim is where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Butts*, 990 F.2d at 1402. Because the EEOC charge here alleged sex and age discrimination arising form the Union's failure to represent her in her grievance against Reynolds, it cannot be said that plaintiff's claim of sexual harassment is a further incident of discrimination carried out in the same manner alleged in the EEOC charge. *See Butts*, 990 F.2d at 1402. Thus, this exception also is inapplicable.

For the foregoing reasons, plaintiff's causes of action based upon sexual harassment against the Union are barred because of her failure to exhaust administrative remedies.

#### 3. Whether the Union Did Not Violate Title VII as a Matter of Law

The Union next asserts that it is entitled to summary judgment with respect to plaintiff's remaining claim that the Union breached its duty of fair representation ("DFR") to plaintiff on account of her age and sex. There is no published decision of the Second Circuit stating the appropriate test to be applied to a Title VII action against a Union. The district courts within this Circuit have held that a *prima facie* case is established against a Union by demonstrating that: (1) the Union Defendants breached the DFR by allowing an alleged breach to go unrepaired; and (2) the Union Defendants' actions were motivated by animus to a protected class. *Doolittle v. Ruffo*, 1996 WL 159850, at *4 (N.D.N.Y. March 27, 1996); *Ross v. Communication Workers of Am., Local 110*, 1995 WL 351462 (S.D.N.Y. Jun.9, 1995), *aff'd*, 100 F.3d 944 (2d Cir.1996). Other circuits have adopted similar tests. *See Bugg v. Int'l Union of Allied Ind. Workers of America, Local 507 AFL—CIO*, 674 F.2d 595 (7th Cir.1982), *cert. denied* 459 U.S. 805, 103 S.Ct. 29, 74 L.Ed.2d 43 (1982); *Farmer v. ARA Services, Inc.*, 660 F.2d 1096, 1104 (6th Cir.1981). Accordingly, the Court applies the two-part test articulated in *Doolittle*.

#### a. Whether the Union Defendants Breached their Duty of Fair Representation by Allowing an Alleged Breach to go Unrepaired

■ "A breach of the [ ] duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1967).

■ The undisputed facts of this case indicate that the Union handled plaintiff's grievance in accordance with the CBA. Although there was an inexplicable delay in the processing of the grievance, plaintiff offers no evidence or factual statements that the delay was the fault of or a result of discriminatory practices by the Union. Plaintiff does not offer any evidence of other situations where the grievance of either a female employee or employee over the age of 40 was delayed by the Union or not processed. In addition, plaintiff does not allege that she was in any way prejudiced by this delay of the grievance. Plaintiff presents no facts upon which a fair minded jury could conclude that the Union's conduct was arbitrary, discriminatory, or in bad faith.

The Union's decision not to pursue the grievance to arbitration similarly does not constitute a breach of the DFR. While "a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, ... an individual [does not have] an absolute right to have his grievance taken to arbitration." *Vaca v. Sipes*, 87 S.Ct. at 917, 87 S.Ct. 903; *Bartels v. New York Lithographers' and Photo–Engravers' Union No. One–P*, 306 F.Supp. 1266, 1271 (S.D.N.Y. 1969), *aff'd*, 431 F.2d 1205 (2d Cir.1970); *See* CBA, Art. VI, Sec. 2, Step 3. "A wide range of reasonableness must be allowed a[ ] bargaining representative in serving the unit it represents...." *Bartels*, 306 F.Supp. at 1271. "In providing for a grievance and arbitration procedure which gives the union discretion to supervise the grievance machinery and to invoke arbitration, the employer and the union contemplate that each will

endeavor in good faith to settle grievances short of arbitration." *Vaca,* 87 S.Ct. at 917.

The CBA does not require the Union to arbitrate all grievances. The Union was not required to arbitrate the grievance if it did not believe it had sufficient merit. *See Lewis v. Tuscan Dairy Farms, Inc.,* 25 F.3d 1138, 1143 (2d Cir.1994). The Union's affidavits state that it believed plaintiff's grievance was without merit and that the CBA had not been violated. Nonetheless, the Union represented plaintiff and attempted to negotiate a settlement.

■ Furthermore, no reasonable jury could conclude that the CBA was discriminatory on either its face or application, or that the Union permitted Reynolds to engage in discriminatory behavior. Plaintiff was reduced from the Recovery Department to the Labor Pool in accordance with the CBA. The CBA applied equally to all workers regardless of their age and sex. When Reynolds suffered a reduction in force, the CBA called for reductions in inverse order of seniority. The CBA's reduction in force procedures are in accordance with a *bona fide* seniority system specifically protected by 42 U.S.C.A. § 2000e–2(h). *International Bro. of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 1863, 52 L.Ed.2d 396 (1977) ("[T]he unmistakable purpose of § 703h [42 U.S.C.A. § 2000e–2(h) ] was to make clear that the routine application of a bona fide seniority system would not be unlawful under Title VII."). Plaintiff offers no evidence suggesting that the seniority system is not neutral or illegitimate. To the contrary, the seniority system applies equally to all genders and age groups.

The undisputed evidence also demonstrates that the reduction in force and the subsequent recall were carried out in conformity with the CBA's seniority system. As of June 1993, approximately four months prior to the reduction in force, there was only one employee in Recovery, Mark Richards, with less seniority than plaintiff. In or about October 1993, Reynolds experienced a reduction in force. As a result, both plaintiff and Richards were reduced in rank and wage grade, while retaining their seniority rights. (CBA, Art. XII). This is evidenced by the seniority lists provided by the Union. (June 22, 1998 affidavit of James Peets, Exs. "B" – "E"). Plaintiff was restored to the Recovery Department on January 3, 1994. Richards was not restored to Recovery until September 5, 1994 to fill an upcoming vacancy. Plaintiff submits no evidence suggesting that any less senior employees were retained in the Recovery Department while she was reduced to the Labor Pool. It, thus, cannot be said that plaintiff was treated differently than any other employees on account of her age or sex.

Similarly, there is no support for plaintiff's assertions that the procedure for filling temporary vacancies or in providing employees for overtime work was discriminatory. The Union asserts that plaintiff was not entitled to be placed in any temporary openings in Recovery during November and December or to cover extra overtime assignments. Plaintiff neither refutes the Union's assertions nor challenges this policy as discriminatory. The CBA does not require temporary vacancies or overtime assignments to be filled with senior employees. The CBA provides that the "Union will provide qualified employees for the performance of overtime work" and that in the event the Union fails to do so, "the Company may assign any employee in their respective departments or shifts to perform the work." (CBA, Art. VII, sec.8). Furthermore, the actual filling of temporary vacancies or overtime assignments was not performed in a discriminatory manner.

Three days after having been reduced, plaintiff was called to fill temporary vacancies in the Recovery Department. She worked in this temporary capacity from November 4, 1993 to November 27, 1993. In late November 1993, plaintiff voluntarily bid to and was placed in a classified position on the "A" shift in the Cast House. Applicable rules required plaintiff to qualify for a period of thirty-five days prior to becoming eligible for overtime. Thus, plaintiff was ineligible for overtime for the month of December 1993. In addition, the "A" shift was not scheduled to work certain holidays that entitled the workers to overtime compensation. Accordingly, plaintiff's claims that she was

discriminated against with regard to the filling of temporary vacancies, filling of overtime assignments, and overtime compensation are without merit.

After reviewing the unrefuted facts in the light most favorable to plaintiff, this Court concludes that no reasonable jury could conclude that the Union breached its DFR.

### b. Whether the Union's Actions Were Motivated By Animus to a Protected Class

Even assuming, *arguendo,* that the Union breached its DFR, plaintiff offers no evidence whatsoever that the Union's actions were motivated by animus towards plaintiff's age or gender.

### c. Whether the Union Has Proffered a Legitimate Reason

██ In a Title VII case, where a plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the defendant to demonstrate a legitimate reason for its actions. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *see Bugg,* 674 F.2d at 599. The burden would then revert to the plaintiff to demonstrate that the reason proffered by the defendant is a pretext. *McDonnell Douglas,* 93 S.Ct. at 1824, 93 S.Ct. 1817.

Assuming that plaintiff can establish a *prima facie* case against the Union, for the reasons stated above, the Union has satisfied its burden of offering legitimate, nondiscriminatory reasons for its actions. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Plaintiff has offered no rebuttal evidence that the Union's reasons are a pretext.

Plaintiff's Title VII claims against the Union, therefore, are dismissed.

**3.** The FMLRA provides that:
Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought

### D. Plaintiff's Third Cause of Action

Plaintiff concedes that the Union cannot be held liable for negligent hiring or retention. Accordingly, plaintiff's causes of action against the Union based upon negligent hiring or retention are dismissed.

Plaintiff asserts, however, that she continues to have a viable cause of action against the Union sounding in negligent supervision of the Union steward. The Union responds that that claim fails because it is not responsible for hiring, supervising, or retaining staff personnel. The Union also maintains that state law negligence claims that relate to a Union's duty to its members are pre-empted by § 301 of the Labor Management Relations Act ("LMRA").[3]

██ In *United Steelworkers of America v. Rawson,* 495 U.S. 362, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990), the Supreme Court stated that § 301 extends to preempt state-law tort actions "if the duty to the employee of which the tort is a violation is created by a collective-bargaining agreement and without existence independent of the agreement." *Id.* (citing *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Plaintiff's claim that the Union negligently supervised the Union steward stems directly from the duty created by the CBA and does not relate to any duty that exists independent of the CBA. In other words, neither the Union nor the shop steward, Mr. Cook, would have any duty to assist plaintiff in the grievance procedure independent of the CBA agreement. Accordingly, "the tort claim [is] not sufficiently independent of the [CBA] to withstand the preemptive force of § 301." *Rawson,* 110 S.Ct. at 1909 (quoting *Internat. Brotherhood of Elec. Workers v. Hechler,* 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987); *Electrical Workers v. Hechler,* 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987)).

. Furthermore, plaintiff fails to point out any language in the CBA indicating that the

in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. 29 U.S.C.A § 185.

Union assumed any additional duties enforceable against the Union by plaintiff. *Argento v. Airborne Freight,* 933 F.Supp. 373, 376 (S.D.N.Y.1996) (quoting *Rawson,* 110 S.Ct. at 1911–12) ("An employee claiming that a union owed him an additional duty under the [CBA] must be able to point to language in the agreement 'specifically indicating an intent to create obligations enforceable against the union by the individual employee.'").

Plaintiff's negligence claim against the Union, therefore, is preempted by § 301 of the LMRA and is dismissed. *See Argento v. Airborne Freight Corp.,* 933 F.Supp. 373 (S.D.N.Y.1996); *Morris v. Local 819, IBT and Colum Flaherty,* 1995 WL 293623 (S.D.N.Y. May 11, 1995) (breach of contract or negligence claim based upon allegation of failure to submit grievance to arbitration is preempted); *Larkin v. General Motors Corp.,* 1992 WL 170888 (S.D.N.Y. July 9, 1992); *O'Hora v. Powerex, Inc.,* 1991 WL 163509 (N.D.N.Y.1991); *Sherwin v. Indianapolis Colts, Inc.,* 752 F.Supp. 1172 (N.D.N.Y.1990).

### E. Plaintiff's Motion for Leave to Amend the 1998 Complaint

Plaintiff cross-moves pursuant to Rule 15 to add a retaliation claim against the Union.

#### 1. Rule 15(d)

Plaintiff asserts that "[t]he issue here is whether the plaintiff is entitled to supplement her complaint pursuant to FRCP 15(d) to include a cause of action for retaliation employed against her by the union since she voiced her complaint about sexual discrimination." (Plaintiff's Memo. of Law, p. 5).

Rule 15(d) provides that "[u]pon motion of a party the court may ... permit the party to serve supplemental pleadings setting forth transactions or occurrences or events *which have happened since the date of the pleading sought to be supplemented....*" (emphasis supplied).

In the present matter, the alleged transactions, occurrences, or events complained of happened *before* the filing of the 1998 Complaint. Therefore, Rule 15(d) is inapplicable. *See, e.g., Rashap v. Brownell,* 229 F.2d 193 (1956); *Town of Texhoma v. Neild,* 9 F.R.D. 739 (W.D.Okl.1943).

#### 2. Rule 15(a)

Plaintiff should have cited to FED.R.CIV. PRO. 15(a) Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Such leave should be denied, however, when it would be futile, cause undue delay or prejudice, or when it is sought in bad faith. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

In this case, it would be futile to permit plaintiff to amend the Complaint to add a cause of action for retaliation because plaintiff cannot establish a *prima facie* case for such. *See, e.g., Azurite Corp. Ltd. v. Amster & Co.,* 52 F.3d 15 (2d Cir.1995).

#### a. Retaliation Claims Under Title VII

"On a motion for summary judgment, (1) plaintiff must demonstrate a *prima facie* case of retaliation, (2) defendant then has the burden of pointing to evidence that there was a legitimate, non-retaliatory reason for the complained of action, and, (3) if the defendant meets its burden, plaintiff must demonstrate that there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation." *Gallagher v. Delaney,* 139 F.3d 338, 349 (2d Cir.1998) (citing *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2d Cir. 1995); *Fisher v. Vassar College,* 114 F.3d 1332, 1335 (2d Cir.1997) (en banc), *cert. denied* —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998)).

"To establish a *prima facie* case of unlawful retaliation, a plaintiff must show: 'i) participation in a protected activity known to the defendant; ii) an employment action disadvantaging the plaintiff; and iii) a causal connection between the protected activity and the adverse employment action.'" *Torres v. Pisano,* 116 F.3d 625, 639 (2d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 563, 139 L.Ed.2d 404 (1997) (quoting *Tomka,* 66 F.3d at 1308). The filing of an EEOC charge constitutes a protected activity known to the Union; thus, the first prong is met.

To demonstrate an adverse employment action, plaintiff must show "that she suffered 'a materially adverse change in the terms and conditions of employment.'" *Torres*, 116 F.3d at 640 (quoting *McKenney v. New York City Off- Track Betting Corp.*, 903 F.Supp. 619, 623 (S.D.N.Y.1995)). "Because there are no bright-line rules, courts must pore over each case to determine whether the challenged employment action reaches the level of 'adverse.'" *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir.1997). For example, in *Johnson v. Palma*, 931 F.2d 203 (2d Cir.1991), the Union refused to process a grievance while a charge was pending with the Division of Human Rights. The Second Circuit agreed that this constituted an adverse employment action because plaintiff was deprived of the ability to expeditiously ascertain and enforce his rights under a CBA with his employer. The *Johnson* case, however, is readily distinguishable from the present matter because plaintiff did have the opportunity to enforce her rights under the CBA.

Plaintiff alleges that the Union discontinued assisting her with her grievance upon learning that she filed a charge with the EEOC. Specifically, plaintiff's attorney's asserts that "Mr. Cook refused to assist Ms. Szarka any further" (Nichols Affirmation, June 12, 1998, ¶ 11), that "the Union refused to assist Ms. Szarka in the matter anymore because she hired a lawyer to represent her interests under a Title VII claim" (*Id.* at ¶ 10), and that a letter from the Union's attorney demonstrate "animosity towards Ms. Szarka for having hired a lawyer" (*Id.*). These allegations are without basis, are contrary to the evidence before this Court, are conclusory, and are insufficient to create a genuine issue of fact.

The evidence clearly demonstrates that the Union continued to attempt to resolve the grievance both after the filing of the EEOC charge and the commencement of this lawsuit all the while acting in accordance with the CBA. Plaintiff has presented no evidence to this Court of any changes in the terms or conditions of her employment as a result of her filing a charge with the EEOC. Plaintiff has offered no evidence that she has been injured in her present employment or in the ability to obtain future employment. *See Torres*, 116 F.3d at 640.

Even assuming plaintiff can demonstrate a material change in the terms and conditions of employment, plaintiff has failed to show a causal connection between the adverse employment action and the protected activity of filing an EEOC charge.

### III. CONCLUSION

For the reasons stated above, case number 97–CV–1558 is dismissed in its entirety. Further, the Union's motion for summary judgment is granted dismissing all claims against it in case number 98–CV–0647. Plaintiff's cross-motion to amend her complaint is denied in all respects.

**IT IS SO ORDERED.**